Milton **FAROWITZ**, Plaintiff-Appellee,

v.

**ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, A. F. OF M.**, Defendant-Appellant.

No. 311, Docket 28434.

United States Court of Appeals Second Circuit.

Argued Feb. 11, 1964.

Decided April 29, 1964.

Godfrey P. Schmidt, New York City (Andrew P. O'Rourke and Anthony J. Shovelski, New York City, on the brief), for plaintiff-appellee.

David I. Ashe, New York City (Ashe & Rifkin, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and WATERMAN and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

This appeal, brought by the Associated Musicians of Greater New York, Local 802, A. F. M., presents two questions. The first is whether a union member is protected against disciplinary action by the union when he urges fellow members not to pay dues pursuant to the union's by-laws which he has good reason to believe are illegal. The second question is whether the district court was clearly erroneous in holding preliminarily that under all the circumstances the plaintiff, Milton Farowitz, did not have to exhaust his remedies within the union before bringing suit, because it would have been futile to do so.

We hold that Farowitz was protected in urging noncompliance with the union by-laws, and that, in light of all the union litigation regarding the collection of "taxes," Judge Levet did not err in not requiring Farowitz first to exhaust his remedies within the union. Accordingly we affirm the preliminary injunction and direct that further proceedings be had not inconsistent with this opinion.

This appeal is another chapter in the proliferating litigation between Local 802 and its parent, the American Federation of Musicians, on the one hand and various orchestra leaders and union members on the other. On June 25, 1962, in Carroll v. Associated Musicians of Greater New York, 206 F.Supp. 462 (S. D.N.Y.), Judge Levet declared unlawful under § 302 of the Labor Management Relations Act, 29 U.S.C. § 186, Local 802's practice of collecting through orchestra leaders in the single engagement field, who themselves never act as sidemen,[1] the 1½ percent tax on all musical engagements assessed upon all working members of the local.[2] In July 1962 Local 802's Executive Board issued a statement that Judge Levet had declared unlawful solely the leaders' collection of the tax but that the membership nonetheless was obligated under the union by-laws to pay the tax.[3]

Both prior and subsequent to the issuance of the Executive Board's statement, Farowitz, a member in good standing of Local 802, distributed leaflets entitled "THEY ARE UNLAWFUL" which urged the membership not to pay the tax on the ground that the union constitution and by-laws provided no alternative to the orchestra leaders' collection, which had been declared unlawful in the Carroll decision.[4]

1. The term "sidemen" refers to musicians who perform in a band or orchestra but does not include the leader or conductor of the band or orchestra.

2. After making this finding, Judge Levet dismissed the complaint since the plaintiffs were not members of the defendant unions. On April 30, 1963, we filed decisions affirming the judgments of the district court in Carroll and in Cutler v. American Federation of Musicians, 2 Cir., 316 F.2d 546, a case involving the identical question raised in Carroll as to the legality of the collection by orchestra leaders of the 1½ percent tax assessed by Local 802.

3. The by-laws of Local 802 provide:
"There shall be payable by and collected from all members a 1½% per cent tax on all engagements based on scale price, therefore: Leaders shall be held responsible for the collection and payment of this tax * * *."

4. Farowitz' leaflet in its entirety stated:
"THEY ARE UNLAWFUL
1. THIS IS THE STATEMENT OF THE DECISION RENDERED BY FEDERAL JUDGE LEVET CONCERNING THE 10% TAX AND THE 1½% LOCAL 802 TAX. AFTER LISTENING TO THE EVIDENCE FOR ONE SOLID WEEK, THE JUDGE MADE THE STATEMENT THAT YOU SEE ABOVE. DON'T TAKE OUR WORD FOR IT LISTEN TO WHAT THE JUDGE WHO HEARD THE CASE RULED. THE STATEMENT ABOVE IS AN EXACT QUOTE FROM THE COURT RECORD. THESE TAXES 'ARE UNLAWFUL', WHY PAY IT?
2. FEDERAL JUDGE LEVET RULED THAT THE LEADERS CANNOT ACCEPT NOR DEMAND FROM YOU THE 10% TAX AND THE 1½% TAX AND GIVE IT TO THE UNION.
3. THE BY-LAWS OF THE LOCAL AND THE FEDERATION SAY THAT 'THE LEADER SHALL BE RESPON-

On September 10, 1962, while appeal was pending from Judge Levet's decision, Local 802 charged Farowitz with violation of the union by-laws [5] in that "defendant publicly issued a leaflet to members of Local 802 A.F. of M. advising them and urging them not to pay the 1½ per cent tax required to be paid by the working members in accordance with the by-laws of Local 802 A.F. of M." After a hearing at which Farowitz testified, the Trial Board on November 14 found him guilty as charged on the ground that after the Executive Board had assured the membership of the legality of the continued collection of the assessment Farowitz had continued to urge non-payment and thereby had sought "to undermine the very existence of the Local." The Trial Board decreed that Farowitz be expelled from membership in Local 802.

Although the Federation's by-laws provide a right of appeal to the International Executive Board, Farowitz sought no further intraunion remedies. Meanwhile on April 18, 1963, we filed our decision in Salzhandler v. Caputo, 2 Cir., 316 F.2d 445, in which we held unlawful, under § 101(a) (2) of the Labor Management Reporting and Disclosure Act (L.M.R.D.A.), 29 U.S.C. § 411(a) (2), union discipline of a member who had accused officers of the union of misappropriation of union funds. Eleven days after, on April 29, 1963, Farowitz instituted this action in the Southern District of New York, alleging that his expulsion had been in violation of § 101(a) (2) of the L.M.R.D.A.[6] and that as a result of his

---

SIBLE FOR THE PAYMENT OF THE SIDEMAN'S TAXES.' THIS HAS BEEN RULED *'UNLAWFUL'* BY THE COURT. THEREFORE, THERE IS *NOTHING* IN THE UNION RULES THAT SAY 'YOU THE SIDEMAN MUST PAY IT TO THE UNION.'

4. *NOW MOST IMPORTANT OF ALL IS THIS INFORMATION:* CHARGES HAVE BEEN FILED WITH THE NATIONAL LABOR RELATIONS BOARD AGAINST LOCAL 802, THE AMERICAN FEDERATION OF MUSICIANS AND *LEADERS* CONCERNING THESE TAXES. THE CHARGE IS THAT THE LEADERS HAVE BEEN ILLEGALLY FORCING YOU TO GIVE THEM THIS TAX MONEY SO THAT THE LEADERS CAN PASS IT OVER TO THE UNION.

5. THE FEDERATION OR ITS LOCALS CANNOT FORCE A LEADER TO COLLECT TAXES FROM THE SIDEMAN.

6. IF THERE ARE ANY THREATS BY THE UNION OR THE LEADER REGARDING THESE TAXES, NOTIFY ME BY MAIL AND WE WILL *GO TO COURT IMMEDIATELY.*
> Milt Farrow
> 14–25 Sunnyside Street
> Far Rockaway 91
> Queens, N.Y."

5. Article IV, Section 1, paragraphs (k), (jj) and (i) of Local 802's by-laws make it cause for expulsion:
"(k) To violate or fail to comply with, or to cause or induce or advise anyone else to violate or fail to comply with the constitution or bylaws or the price lists contained in Article 10 as the same now exist, or as they may be hereafter enacted, changed, or amended.

"(jj) To commit any act of bad faith or unfair dealing which has for its purpose the injuring of the local or any of its officers or members, or the American Federation of Musicians, its locals or the officers and members thereof, respecting the affairs and welfare of the local or of the American Federation of Musicians or any of its affiliated locals, or respecting in general the welfare of the musical profession.

"(i) To fail to comply with the instructions or orders of the executive board or any other proper authority of the local."

6. Section 101(a) (2) provides:
"Freedom of speech and assembly.— Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that

expulsion he had been unable to secure work as a musician. He sought injunctive relief and money damages. By order to show cause obtained the same day he moved for a preliminary injunction. From Judge Levet's order of May 28, 1963, which granted Farowitz' motion for a preliminary injunction and denied its motion for summary judgment, Local 802 appeals.

Local 802 contends that the order should be reversed on two grounds: first, that Farowitz' expulsion falls within the proviso to § 101(a) (2) which states that "nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations"; and second, that Farowitz failed to exhaust his intraunion remedies as required by § 101(a) (4) of the L.M.R.D.A., 29 U.S. C. § 411(a) (4).[7]

■ We find that Farowitz' actions were protected within the rationale of our decision in Salzhandler. In holding unlawful under § 101(a) (2) union discipline of a member because he had allegedly defamed officers of the union, we stated: "[T]he statute abundantly evidence[s] the intention of the Congress to prevent union officials from using their disciplinary powers to silence criticism and punish those who dare to question and complain." Local 802's contention here that Farowitz misrepresented the tenor of the Carroll decision of the district court with a design to undermine the union's very existence is unsupported by the facts. The leaflet Farowitz distributed on its face did no more than conclude from the Carroll decision and the union by-laws that no permissible method of collecting the tax remained. This was

not an unreasonable reading of the by-laws in the light of the district court ruling that orchestra leaders who were not sidemen could not be required to collect the 1½ percent tax. In urging that the membership refuse to pay the tax Farowitz was suggesting one rational method of testing its validity and forcing an alteration in union policy, such as an amendment of the by-laws which might provide for a proper means of collecting the dues or taxes from the membership.

We do not say that there may not be some situations in which a union member would not be protected against disciplinary measures if he were to urge other members to forego paying their dues. Each case of course must turn on its own facts. All we decide is that a member having such good reasons as here to believe that the collection of taxes or dues runs afoul of the law has the right to call this to the attention of the membership and to urge that they refrain from paying such assessments.

■ Thus it is clear that here, as in Salzhandler, the elements of the proviso to § 101(a) (2) are not satisfied. A rule which subjects a member to expulsion for complaining of a tax which he reasonably believes to be illegal is not a reasonable rule. A member's responsibility to his union as an institution surely cannot include any obligation that he sit idly by while the union follows a course of conduct which he reasonably believes to be illegal because of what a court of law has stated.

■■ As for Local 802's alternative contention that Farowitz had not exhausted his intraunion remedies, it is clear that where there is reason to believe that resort to an appeal within the union would be a futility it is not necessary to follow such a course as a prerequisite to legal action. See Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2

---

would interfere with its performance of its legal or contractual obligations."

7. Section 101(a) (4) provides, in pertinent part:
  "*Provided*, That any such member may be required to exhaust reasonable

hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof * * * "

Cir. 1961). Judge Levet found that a further appeal by Farowitz to the International Executive Board would have been futile, inasmuch as the Federation has consistently taken a position contrary to Farowitz' and has indeed been asserting its position in litigation since March 1960. While one cannot necessarily equate the Federation's position on the 1½ percent tax with the view it would have taken on the propriety of Farowitz' expulsion, Judge Levet was thoroughly advised of the position of the union and its parent on these matters as several of the litigated actions had already come before him, and it was not an abuse of discretion for him to conclude that the likelihood of futility was so great that preliminary relief ought not be withheld. The order here in issue granted merely a preliminary injunction *pendente lite*; Judge Levet explicitly retained for trial the question whether further intraunion proceedings at this juncture would be futile, and this question is of course open for further examination prior to determination of the action.

The order of the district court is affirmed.