Robert A. GARTNER, Appellant,

v.

Jack SOLONER, President, and Robert C. Brennan, Secretary-Treasurer, and American Bakery & Confectionery Workers International Union, AFL–CIO, Local 492, Appellees.

No. 16291.

United States Court of Appeals Third Circuit.

Argued April 3, 1967.

Decided Sept. 1, 1967.

Rehearing Denied Oct. 30, 1967.

Nealon, District Judge, dissented.

Joseph A. Malloy, Jr., Hamilton, Darmopray & Malloy, Philadelphia, Pa., for appellant.

Alan R. Howe, Philadelphia, Pa., (Edward Davis, Philadelphia, Pa., on the brief), for appellees.

Before McLAUGHLIN and GANEY, Circuit Judges, and NEALON, District Judge.

OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

This appeal involves solely the question of whether counsel fees are allowable under Section 102 of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 73 Stat. 523 (1959), 29 U.S.C. § 412 (1964).

Appellant Robert Gartner was fined and suspended from Local 492 of the American Bakery and Confectionery

Workers International Union, AFL-CIO, allegedly for protesting a denial of voting rights to union members. Gartner's appeal to the Union International was turned down and on June 24, 1963 he instituted this action under the Labor-Management Reporting and Disclosure Act of 1959. Aside from injunctive relief appellant sought counsel fees and other expenses incurred in pursuit of his rights under the LMRDA. The Court below found that the action taken by the union was in violation of 29 U.S.C.A. §§ 411 (a) (2) and 529, Sections 101(a) (2) and 609 of the Act. Although a permanent injunction in favor of appellant was filed on April 18, 1966, Gartner's claim for money damages was rejected by the District Court. Discussing the findings of fact the District Judge concluded that counsel fees could not be awarded under Section 102. We believe that decision must be reversed.

Title I of the LMRDA is the so-called civil rights provision of the Act. These rights are those possessed by the rank and file union members and are enumerated in Section 101. Section 102 provides for civil enforcement in the event a person's rights under Title I have been infringed upon. Section 102 reads:

"Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

### . LEGISLATIVE HISTORY [1]

The LMRDA originated with the reporting of the Kennedy-Ervin Bill to the Senate by the Committee on Labor and

Public Welfare on April 14, 1959. However, that bill made no mention of a union member's bill of rights. The bill of rights along with the section pertaining to the civil enforcement of those rights was proposed as an amendment to the Kennedy-Ervin Bill by Senator Mc-Clellan. The enforcement section of that amendment provided:

"The Secretary, whenever it shall appear that any person has violated or is about to violate any of the provisions of this title, may bring an action in a district court or other court of the United States for such relief as may be appropriate including, but without limitation, injunctions to restrain any such violations and to compel compliance with this title. Any such action against a labor organization may be brought in the United States District Court for the District of Columbia or in the district court or other court of the United States where the violation occurred or is about to occur." Leg.Hist., Vol. II, p. 1102.

Those critical of the enforcement provision were concerned with the bureaucratic chaos that might result if the Secretary of Labor were required to initiate all complaints on behalf of aggrieved union members. Leg.Hist., Vol. II, pp. 1111–1114. To dispel these fears an amendment was offered by Senator Kuchel of California giving the union member, not the Secretary of Labor, the right to seek relief in the federal courts. The Kuchel amendment became the version ultimately adopted by the Senate and states:

"Any person whose rights secured by the provisions of this title have been infringed may bring an action in a district court of the United States for such relief as may be appropriate. Any such action against a labor organization shall be brought in the United States district court for the district

where the alleged violation occurred, or where the headquarters of such labor organization is located." Leg. Hist., Vol. II, p. 1221.

In the House of Representatives the Landrum-Griffin Reform Bill (H.R. 8400, Leg.Hist., Vol. I, p. 619) was introduced as a substitute for the Kennedy-Ervin Bill, but contained basically the same remedy for civil enforcement of the bill of rights. Leg.Hist., Vol. I, pp. 631, 632. Thereafter the only substantial alteration was the parenthetical insertion of the words "including injunctions" to insure that at least an injunction would be considered appropriate relief under Section 102.

### COURT DECISIONS

The first case to rule on the propriety of counsel fees under Section 102 was Vars v. International Brotherhood of Boilermakers, 215 F.Supp. 943 (D.Conn. 1963), where the court found that such allowances were intentionally excluded by Congress. As indicative of the legislative intendment the court referred to the dissenting House Report which stated:

"One of the most serious inadequacies of the Senate bill is the lack of any effective enforcement procedure to protect union members from those few union officials who fail to recognize that a union belongs to its members. Under that bill the individual member must shoulder the burden of litigation costs himself. The union officer [sic], on the other hand, have the entire resources of the union at their disposal. This impractical enforcement method is weakened still further in the committee bill." U.S.

Code Cong. & Ad.News, Legislative History, Vol. 2, 86th Cong., 1st Sess., p. 2492 (1959).

The Second Circuit affirmed the District Court decision, Vars v. Int'l Bhd. of Boilermakers, 320 F.2d 576 (2 Cir. 1963), but without mention of the lower court's disposition on the matter of counsel fees.

In McCraw v. United Ass'n of Journey. & App. of Plumbing, 216 F.Supp. 655 (E.D.Tenn.1963), the court was asked to consider counsel fees as appropriate relief under Section 102. Once more the court was of the opinion that the legislative history of the LMRDA militated against such recovery. Here, however, the court was persuaded by the following remarks of Senator Goldwater:

"Although the bill permits the union member himself to sue for infringement of his rights, the nature of the suit is such as to promise, even if successful, little in the way of monetary damages except in the rare case where the plaintiff's job rights or job tenure have been adversely affected. Moreover, the bill does not grant him, even where successful in his suit, reasonable counsel fees or other costs." Leg.Hist., Vol. II, p. 1281.

On appeal the Sixth Court affirmed the District Judge's finding " * * * that no provision is made for the allowance of attorney's fees in an action under Section 101 or 102 of the Act. * * *." McCraw v. United Ass'n of Journey. & App. of Plumbing, 341 F.2d 705, 710 (6 Cir. 1965).

The decision in Cole v. Hall, 35 F.R.D. 4 (E.D.N.Y.1964), although acknowledging that counsel fees might be granted in an action at common law,[2] found no

---

2. The common law recovery mentioned by the court was one cognizable in a state court action. Although the problem was not discussed in Cole, the propriety of allowing counsel fees in an action before a state court raises the question as to whether federal courts sitting in states permitting such recovery could properly follow suit under Section 103 of the LMRDA, 29 U.S.C.A. § 413, which provides that "Nothing * * * shall limit the rights

and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and bylaws of any labor organization." Cf. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Parks v. Int'l Bhd. of Electrical Workers, 314 F.2d 886, 903 (4 Cir. 1963). However, because of the decision reached by this Court it will be

basis for such a claim under the LMRDA. Beside relying on the Vars and McCraw cases the court in Cole thought it significant that Section 501(b) of Title V of the LMRDA made allowances for fees and if Congress had intended to make a similar provision in Title I it would have so acted.

Johnson v. Nelson, 325 F.2d 646 (8 Cir. 1963) lends solid support to appellant's position. There, internal union strife arose over the payment of attorneys' fees incurred by union members after they had successfully asserted their rights under Title I of the Act. A Special Trial Board, constituted pursuant to a stipulation entered into in the first federal court (Title I) proceeding, recommended that attorneys' fees and expenses for both sides in the conflict be paid by the union local. The recommendation was then approved by a constitutional vote of the local membership. When the union would not comply with the Board's directive or recognize the membership vote an action was commenced under Title V, Section 501(b) of the LMRDA to compel the payment of fees and expenses. The Court of Appeals for the Eighth Circuit affirmed the decision to award counsel fees stating that, "We are by no means announcing a rule requiring payment of attorneys' fees to successful union member litigants in every Title I court proceeding—regardless of the circumstances." 325 F.2d 646 at 654. The court cited Vars, supra,

but distinguished it on the factual points that in Vars there was an attempt to recover fees in the Title I action [3] plus the conspicuous absence of the union vote approving the payment by the local.

The District Court below in denying appellant's claim for expenses considered the expressions of Senator Goldwater to mirror the legislative intent, citing the opinions in Vars, McCraw and Cole as further authority for that view. Distinguishing Johnson v. Nelson, supra, the District Judge commented that "of prime significance" in the Johnson case was the membership vote to reimburse the litigants, which fact does not appear in this appeal.[4]

### COUNSEL FEES AS PROPER RELIEF UNDER SECTION 102

It does not seem that to date the legislative intent in the LMRDA as to counsel fees has been closely examined, indeed the specific language of Section 102, if anything, has been unwarrantably circumscribed. The Act gives the federal courts, in precise terms, the authority to dispense "relief (including injunctions) as may be appropriate." In the search for an explanation of what appropriate relief entails the courts have found regnant the remarks made in the dissenting House Report and those of the Senator from Arizona. It should be noted that neither of those commentaries were voiced as a part of the floor debate on the Act in either the House or Senate.[5]

unnecessary to expand this point. But see: Leg.Hist., Vol. II, p. 1281 (where Senator Goldwater remarks on the preservation of remedies under state common law principles); Hickey, The Bill of Rights Of Union Members, 48 Geo.L.J. 256 (1959); Prevailing Union Member's Right to Recover Attorneys' Fees In Action Against Union Or Union Officers, 9 A.L.R.3d 1045.

3. The case before the Eighth Circuit differs in that it was brought under Title V, Section 501(b), subsequent to the Title I proceeding and subsequent to the consensual vote by the local membership.

4. Other cases which have passed on the allowance of counsel fees under Section 102,

but without discussion of the merits, are: Jacques v. Local 1418, Int'l Longshoremen's Ass'n, 246 F.Supp. 857 (E.D.La. 1965); Leonard v. M. I. T. Employees' Union, 225 F.Supp. 937 (D.Mass.1964); Magelssen v. Local Union No. 518, Operative Plasterers, 240 F.Supp. 259 (W.D. Mo.1965); Bailey v. Netter, 266 F.Supp. 165 (E.D.La.1967).

5. Senator Goldwater's views were those he expressed before the Committee on Education and Labor, of the House of Representatives on June 3, 1959 and printed in the Congressional Record, without objection, at the suggestion of the Senator. Leg. Hist., Vol. II, p. 1280.

The dissenting House Report, made by nine members of the House Committee on

Senator Goldwater's sincere statement did point up the need of enabling a single member to enforce his rights. It did not attempt to analyze the efficacy of the phrase used to cover the relief which might be needed including counsel fees. The Senator's offhand thought was that " * * * the bill does not grant him [a union member suing under Section 102], even where successful in his suit, reasonable counsel fees or other costs." Leg.Hist., Vol. II, p. 1281. Yet many forms of relief and costs have been recognized under Section 102, including: strike benefits, Vars v. Int'l Bhd. of Boilermakers, supra; punitive damages, Farowitz v. Associated Musicians of Greater N. Y., Local 802, A. F. of M., 241 F.Supp. 895 (S.D.N.Y.1965), aff'd 330 F.2d 999 (2 Cir. 1964); [6] injury to reputation with accompanying mental anguish,[7] Simmons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012 (4 Cir. 1965); and in this suit before the District Court plaintiff recovered "legally allowable costs." [8] The damages permissible under Section 102 have been set to include only those directly and proximately resulting from a violation of the Act. McCraw v. United Ass'n of Journey. & App. of Plumbing, supra; Simmons v. Avisco, Local 713, Textile Workers Union, supra. But there does not appear to be, in the cause presented for counsel fees, any element less direct or proximate which would alienate that relief from the type of award handed down in the above cited cases. Certainly the litigation costs borne by a union member who successfully asserts his rights under Title I is not collateral to but directly results from a violation of that member's rights by the union.

■ It is not disputed that some members of Congress wished to provide expressly for counsel fees under Section 102. Other legislators indicated that such a provision might not be consistent with the broad powers given the courts to furnish relief "as may be appropriate." Senator Clark of Pennsylvania, while commenting on the Kuchel amendment, stated that " * * * it takes the Federal bureaucracy out of this bill of rights and leaves its enforcement to union members, aided by the courts." Leg.Hist., Vol. II, p. 1233. Significantly, Senator Clark's statement was iterated by Senator McClellan, the author of the LMRDA bill of rights, in a supplement to his testimony before the House Education and Labor Committee. Leg.Hist., Vol. II, p. 1294. Before the House of Representatives a detailed explanation of the Elliott Bill (see footnote 5), prepared by Rep. Elliott himself, was read into the record. Considering the remedies available under the bill of rights enforcement section, Rep. Elliott stated:

"Thus a suit to prevent and restrain a violation of the so-called bill of rights might terminate in an injunction, but also in an order setting aside discipline imposed by a labor organization, and restoring the plaintiff to membership if appropriate, and awarding monetary damages if suffered. The court's jurisdiction ' * * * to grant such other and further relief as may be appropriate' *gives it a wide latitude to grant relief according to the necessities of*

---

Education and Labor, opposed the reporting of H.R. 8342 (the Elliott Bill) to the House of Representatives. It is worthy of comment that H.R. 8342, (the Elliott Bill) was not the Landrum-Griffin Bill, H.R. 8400, eventually passed by the House. However, the language pertaining to relief under the civil enforcement provisions of both bills is for all practical purposes the same.

6. In Burris v. Int'l Bhd. of Teamsters, 224 F.Supp. 277 (W.D.N.C.1963), the court held punitive damages to be unre-coverable under Section 102. See also Cole v. Hall, 35 F.R.D. 4 (E.D.N.Y. 1964).

7. Emotional distress, standing alone, has been held not to constitute a sufficient basis for awarding damages under Section 102. Int'l Bhd. of Boilermakers, etc. v. Rafferty, 348 F.2d 307 (9 Cir. 1965).

8. The Conclusions of Law filed by the District Judge below read in part:
"6. Plaintiffs, having successfully prosecuted these suits, are entitled to legally allowable costs."

*the case."* (Emphasis · supplied.) Leg.Hist., Vol. II, p. 1584.

Representative O'Hara of Michigan was of a mind that:

> "These rights are enforced effectively and fairly by civil actions in the Federal courts. In such suit the court can award money damages to compensate *any loss* suffered by a member through denial of any of the enumerated rights and can enjoin any repetition of actions which deprive the member of his rights." (Emphasis supplied.) Leg.Hist., Vol. II, p. 1632.

In attempting to extract the legislative purpose primary concern should always be given to the views expressed by the sponsors of the bill and in this respect the statements of Senator McClellan and Rep. Elliott should be looked to as representing the true spirit of Section 102. See National Woodwork Manufacturers Assn. v. N.L.R.B., 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967); Schwegmann Bros. v. Calvert Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951).

It is apparent that under Section 102 the courts, in considering each case, individually, on its merits, were intended to be the arbiters of both legal and equitable relief. Clearly Congress made no move to expressly limit· or prescribe the scope of recovery under the enforcement section. Further, in spelling out remedies there is a danger that those not listed might be proscribed with the result that the courts would be fettered in their efforts to "grant relief according to the necessities of the case." See Fleischmann v. Maier Brewing, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

In deciding that counsel fees are proper items of recovery under Section 102 it is important that we have not found any prior decisions compelling a contrary conclusion. Most instances which have denied the relief sought here have relied too readily and too strongly on Vars v. Int'l Bhd. of Boilermakers, supra, for the proposition that the courts are without power to grant counsel fees under Section 102. We question that the District Court in Vars meant to be that restrictive; it at least seemed to indicate that exemplary damages might include an item for counsel fees where defendant's actions were motivated by wilful malice.[9] Also, the court in Vars based its decision partly on the belief that counsel fees were not compensable damages. Recently the Supreme Court has indicated that such fees do constitute compensable damages.[10] And we have the fact that other sections [11] of the LMRDA which specifically call for the awarding of counsel fees in no way controls the legislative intent with respect to Section 102. In the instances where such awards are made the actions are narrowly defined to an examination of books and records under Section 201(c) and an accounting under Section 501(b). Neither section can be compared with an action to enforce a union member's bill of rights where the relief must be tailored to fit facts and circumstances admitting of almost infinite variety.

The case of Johnson v. Nelson, supra, where counsel fees were awarded, was not deemed controlling by the District Court below since the fees there were approved by a majority vote of the union membership. That distinction is not

---

9. The court stated at 215 F.Supp. 943, 952:

> "In its wisdom Congress refrained from including attorneys fees as an item of damages. No issue has been raised in this litigation that the defendant's actions were motivated by willful malice nor has any claim been made for exemplary damages because of malice. Counsel fees and expenses are not compensable damages and are hereby denied."

10. Speaking on the recoverability of counsel fees under the Lanham Act the Court stated that "[a] judicially created compensatory remedy in addition to the express statutory remedies is inappropriate in this context." Fleischmann v. Maier Brewing, 386 U.S. 714, 87 S.Ct. 1404 (1967).

11. Section 201(c), 29 U.S.C.A. § 431(c) and Section 501(b), 29 U.S.C.A. § 501(b).

sound and does not come to grips with the fundamental problem of whether the courts have the power to dispense relief which might include compensation for legal expenses. It will be remembered that in Johnson an action was brought under Title I resulting in a stipulation which set up a Special Trial Board. It was only after the Special Trial Board recommended that attorneys' fees be awarded to both sides in the dispute that the vote of approval was taken. Thereafter a suit under Title V of the LMRDA was instituted by union members to recover the fees the union refused to pay. Upholding the allowance of counsel fees the Eighth Circuit stated:

> "Vars v. International Brotherhood of Boilermakers, etc., D.Conn., 215 F. Supp. 943, 952 (1963)—cited by appellants in oral argument—is not contrary to our decision here. In Vars, the union member asserting violation of rights under Title I attempted to recover his attorneys' fees in that very Title I action, and—among other factual differences—there had been no union vote approving such expenses to be paid by the local." 325 F.2d 646 at 654.

Factual hairsplitting and case distinctions do not govern the issue on this appeal. Reimbursement for legal costs is proper only if the power to bestow such relief is invested in the courts under Section 102. In Johnson the Special Trial Board which recommended the reimbursement of counsel fees by the union local was born out of the Title I proceeding. That is, the relief granted in the first district court action made the Special Trial Board a reality which in turn allowed the recovery of fees and expenses. The vote by the union membership was an approval of the Board's award, an award which indirectly accomplished what allegedly might have seemed

to be forbidden directly in a suit under Title I of the LMRDA. Johnson v. Nelson of itself does not solve completely our decisive point and the resulting implications now faced by this Court, but in reaching a decision it must be considered and cannot easily be distinguished.

Section 102 bestows upon the Federal district courts the authority to grant "relief (including injunctions) as may be appropriate." It should be emphasized that these words are not of the limiting type found in Fleischmann v. Maier Brewing, supra, to restrict recovery to those remedies which are expressly set forth in the statute. In contrast, the scope of authority under Section 102 and the flexibility with which that power may be exercised is practically unlimited in view of the courts legal and equitable jurisdiction. Judge Sobeloff of the Fourth Circuit correctly stated that:

> "The parenthetic specification of the words 'including injunctions' must have been designed to broaden the possible relief to include the equitable remedy, but it cannot be construed to dislodge other forms of relief such as the award of damages where appropriate. The 'civil action' which the statute authorizes embraces legal as well as equitable remedies. There is no justification for a narrower construction." Simmons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012 at 1019 (4 Cir. 1965).

The varieties of relief, among them the recovery of counsel fees, endemic to any exercise of equitable jurisdiction by our federal courts cannot be contravened. Justice Frankfurter made it clear that "[a]llowance of such costs in appropriate situations is part of the historic equity jurisdiction of the federal courts." Sprague v. Ticonic Bank, 307 U.S. 161, 164, 59 S.Ct. 777, 779, 83 L.Ed. 1184 (1939).[12] Plainly the federal courts are

---

12. Although the Supreme Court distinguished the Sprague case in Fleischmann v. Maier Brewing, supra, its reasoning seemed to turn on the fact that the Sprague rule was not " * * * developed in the context of statutory causes of action for which the legislature had prescribed intricate remedies." As mentioned above Section 102 is not the type of statutory cause of action that prescribes "intricate remedies."

empowered under Section 102 to come to the aid of any union member whose civil rights have been infringed upon by the union and to compensate that member for reasonable counsel fees and other expenses resulting from that Title I action.

■ The Eighty-sixth Congress of the United States, acting on recommendations of the McClellan Committee, was faced with the task of fashioning legislation to curb the racketeering which threatened to annul the hard fought gains of this country's honest working men and women. The Labor-Management Reporting and Disclosure Act of 1959 was the Congressional answer which attempted to strengthen the individual rights of labor union members and to rid the labor movement of the unsavory elements with which it had unfortunately become associated. Setting forth its findings, purposes and policy Congress found:

> " * * * from recent investigations in the labor and management fields, that there have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct which require further and supplementary legislation that will afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives." 73 Stat. 519 (1959), 29 U.S.C. § 401 (b) (1964).

Thus Section 102 of the LMRDA opens the door of the federal judicial system to the individual union member whose rights have been infringed upon except that stark reality might slam the door in that litigant's face when confronted with the insurmountable obstacle of prohibitive legal expenses.[13] In construing the statute the court must consider the purpose of its enactment, the evil to be eradicated, the object to be obtained and recognize the construction that would best effectuate those standards. Carter Oil Co. v. Norman, 131 F.2d 451, 457 (7 Cir. 1942); United States v. Chase, 135 U.S. 255, 261, 10 S.Ct. 756, 34 L.Ed. 117 (1890). With this in mind the interpretation reached by this Court is consonant with the Congressional desire of passing "legislation that will afford necessary protection of the rights and interests of employees and the public generally." In the context of the Labor Management Act it is untenable to assert that in establishing the bill of rights under the Act Congress intended to have those rights diminished by the unescapable fact that an aggrieved union member would be unable to finance litigation and would have no hope of remuneration even if he could some way or other proceed with his suit.

As is revealed by its voluminous legislative history, in the heavy pressure atmosphere attending the creation of the Labor Management bill of rights legislation there was a manifest reluctance to specifically detail the individual's right to reimbursement for counsel fees expended in defeating his union's effort to deprive him of his fundamental rights as a member. Nevertheless, the Congress was successful in protecting that right by giving such union member "appropriate relief". That phrase, while it avoided spotlighting the making available of necessary material assistance to a single unionist fighting his lonely battle for justice, did take care of the situation by means of the deliberately general language used. In the clear light of the latter, if the Congress had concluded to reverse its field and tear up the bill of rights it had drafted, it would have stated that there would be no counsel fees allowed. Absent this, "appropriate relief" fairly construed must be held to include proper counsel fees.

---

13. See Summers, The Law of Union Discipline; What the Courts Do in Fact, 70 Yale L.J. 175, 220–222 (1960).

■ From all of the above we therefore hold that under Section 102 of the Labor-Management Reporting and Disclosure Act of 1959 the federal district courts have the discretionary power, and may, when they deem it proper, award reasonable counsel fees to a union member or members who have in good faith pursued their rights under Title I of the Act.

That part of the judgment of the District Court will be reversed as to its holding that as a matter of law counsel fees could not be awarded plaintiffs in this litigation. The balance of the District Court judgment will be affirmed. The case will be remanded for further proceedings with respect to plaintiffs' application for counsel fees, in accordance with this opinion.

NEALON, District Judge (dissenting).

Ordinarily, counsel fees are not recoverable as damages or taxable as costs. Fleischmann v. Maier Brewing Company, 386 U.S. 714, 87 S.Ct. 1404 (1967). If counsel fees are to be allowed in this statutory proceeding, then, as the majority opinion states, such reimbursement " * * * is proper only if the power to bestow such relief is invested in the courts under Section 102." Congress specifically authorized payment of counsel fees in enforcement actions under Section 201(c) [1] and Section 501(b) [2], but did not adopt the same language in a Title I proceeding enforceable under Section 102. As a matter of fact, the enforcement language in Section 102 is similar to that applicable in enforcement proceedings under Sections 210 [3] and 304(a). [4] It is interesting to note that,

1. Title II, § 201(c) provides:

    "(c) Every labor organization required to submit a report under this subchapter shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records and accounts necessary to verify such report. The court in such action may, in its discretion, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

2. Title V, § 501(b):

    "(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of

competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for the good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation."

3. Title II, § 210 provides, in pertinent part:

    "Whenever it shall appear that any person has violated or is about to violate any provisions of this subchapter, the Secretary may bring a civil action for such relief (including injunctions) as may be appropriate."

4. Title III, § 304(a) provides, in pertinent part:

    "(a) Upon the written complaint of any member or subordinate body of a labor organization alleging that such organization has violated the provisions of this subchapter (except section 461 of this title) the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied he shall, without disclosing the identity of the complainant, bring a civil action in

as in Sections 210 and 304(a) proceedings, the only party authorized to seek relief in the original version of Section 102, the McClellan amendment, was the Secretary of Labor. This was changed, as the majority opinion notes, to avoid "the bureaucratic chaos that might result if the Secretary of Labor were required to initiate all complaints on behalf of aggrieved union members." Obviously, the Secretary would not be entitled to reimbursement for counsel fees under Sections 210, 304(a) or the original language of 102. Thus, it would appear that counsel fees were never considered by Congress as coming within the remedy of " * * * such relief * * * as may be appropriate." Although a broad, liberal reading of Section 102 might support the conclusion reached by the majority here, I find no Congressional authorization for such a reading and, indeed, all Congressional comment contained in the legislative history is to the contrary.[5] I would affirm the judgment of the District Court.

Godbold, Circuit Judge, dissented.

---

any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate."

5. Senator Goldwater's views as contained in Legislative History, Vol. II, p. 1281,

and the dissenting House Report, U. S. Code Cong. & Adm.News, Legislative History, Vol. 2, 86th Cong., 1st Sess., p. 2492 (1959).