Guido **GIORDANI**, Appellee,

v.

**UPHOLSTERERS INTERNATIONAL UNION OF NORTH AMERICA**, an un-incorporated association, Appellant.

No. 136, Docket 32524.

United States Court of Appeals
Second Circuit.

Argued Sept. 30, 1968.

Decided Oct. 23, 1968.

**86**

Benjamin Wyle, New York City, for appellant.

Gene Crescenzi, New York City, for appellee.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Guido Giordani brought this action in the District Court for the Southern District of New York seeking an injunction ordering the Upholsterers' International Union [U.I.U.] to reinstate him, on the ground that his expulsion violated the right of free speech guaranteed him by the Labor-Management Reporting and Disclosure Act, § 101(a) (2). Giordani moved for a temporary injunction pending trial, and in response the U.I.U. moved for a dismissal of the complaint or, alternatively, for summary judgment. Judge Tyler, before whom the motions were heard, denied the U.I.U.'s motions, granted summary judgment for Giordani, and ordered the U.I.U. to reinstate him as a member in good standing effective as of the date of his expulsion.

**I.**

The relevant facts are not in dispute. The U.I.U. is an International or parent labor organization, with approximately 55,000 members in 200 local unions in the United States and Canada, exercising jurisdiction generally in the furniture and related industries. Its principal office is in Philadelphia. Prior to the expulsion here in question, Giordani, a resident of New York, was a member of the U.I.U. and its Local 44. He claims no loss of employment as a result of his expulsion.

Concerned that the U.I.U. was improperly administering its welfare and pension funds, Giordani wrote a letter charging the Union with misappropriating moneys from these funds, which he distributed on or about July 25, 1966, to the membership of his local and to certain public officials, including United States Senators, Congressmen, and the President of the United States. In the letter he stated: "I have proof that my international union which local 44 is affiliated with has all our money under their control and has misappropriated in 1963–64 only these years [sic], the sum of approximately 900 thousand ($900,000) dollars." The letter concluded with a suggestion that the Secretary of Labor institute an action to correct this fiscal abuse. As the next step in his campaign, Giordani, on November 7 of that year, sent a letter addressed to the members of the General Executive Board of the U.I.U. and signed by Giordani and six other members of his local in which he charged that the Board was improperly administering the U.I.U.'s welfare and pension funds in certain specified respects and that the International's president Sal B. Hoffman was drawing excessive salaries and otherwise misappropriating moneys from the funds for his personal benefit. The letter concluded with a demand that the Board correct the enumerated defects in the administration of the funds and proceed against

Hoffman to recover the sums which he had improperly taken for his own use. When the Board took no action, Giordani and his six followers on December 23, 1966, brought an action seeking the above relief in the Eastern District of Pennsylvania.[1] That action is still pending.

On February 2, 1967, several members of Local 44 filed with the U.I.U. a charge that Giordani had violated the International's General Laws by the false accusation of U.I.U. misappropriation of funds contained in his letter of July 25, 1966.[2] Giordani was served with a copy of the charge, and in his answer he did not deny sending the letter in question but maintained that its accusation was true. Pursuant to the General Laws, a hearing on the charge was held on June 3, 1967 in New York before a Hearing Officer appointed by the U.I.U. Giordani attended and participated. The Hearing Officer found that Giordani's statement was "reckless and unfounded, calculated to create dissension among the union membership and designed for the purpose of disrupting the orderly functioning of the U.I.U. organization." He therefore concluded that Giordani had violated Article XXXVII, Section 20 of the U.I.U. General Laws[3] and recommended that he be expelled.

At its meeting on August 14, 1967, the General Executive Board adopted the Report of the Hearing Officer and voted unanimously to expel Giordani from its membership as of that date. Giordani was so informed by a letter dated August 22, which also advised Giordani of his right under the General Laws to appeal the decision of the Board either to the next U.I.U. convention to be held in 1970, the U.I.U. Council of Delegates, or the U.I.U. Public Appeal Board.[4] By a letter

dated September 11, 1967, Giordani requested that the Board reconsider its decision to expel him. The Board, meeting on November 29, reconsidered and affirmed its previous action, and Giordani was so notified by a letter of December 21. On the following January 3, Giordani appealed the latter decision of the Board to the next U.I.U. convention. And finally, on January 15, 1968, Giordani instituted this action in the court below.

II.

Appellant first contends that we must reverse because venue does not properly lie in the Southern District of New York. Section 102 of the LMRDA provides that actions under Section 101 shall be brought in the district where the labor organization has its principal office or in the district "where the alleged violation occurred." Since the principal office of the U.I.U. is in Philadelphia, the propriety of venue here depends on whether the U.I.U's alleged violation of Giordani's right of free speech under § 101 (a) (2) of the Act may be said to have occurred in New York.

Appellant urges that the alleged violation in this case consisted of the General Executive Board's act in expelling Giordani, and that act occurred in Philadelphia, where the Board made and affirmed its decision to expel him. We believe that the term "violation" should not be so narrowly construed. The internal deliberations of the Board alone constituted no violation of the Act; rather, the Board's decision is challenged because its purpose and effect were to chastise Giordani for the exercise in New York of what he claims to be his protected rights. See Vestal v. International Brotherhood of Teamsters, etc., 245 F.

---

1. That action was brought under § 501 of the LMRDA.

2. They also charged Giordani with two other unrelated violations of the General Laws, but he was exonerated of these charges by the Hearing Officer.

3. U.I.U. General Laws art. 37, § 20 provides:

"Members shall not make or spread, directly or indirectly, incorrect, false, malicious, or slanderous statements, reports and accusations concerning the International Union or members or officers of the International Union or of any administrative subdivision thereof."

4. U.I.U. General Laws, art. 34, § 6(a) (1).

Supp. 623 (M.D.Tenn.1965). Where, as here, a member charges that his union has interfered with his rights under the Act, that interference must be said to have occurred where it actually took effect upon the member, not where the union determined its plan of action. Moreover, in this case, significant steps in the process leading to Giordani's expulsion were effected within the district. The charges were brought by members of Giordani's local in New York, the hearing on the charge upon which the Board's action was predicated was conducted in New York, and the letter informing Giordani of his expulsion was served upon him in New York. See Vestal v. International Brotherhood of Teamsters, etc., supra. Coleman v. Brotherhood of Railway & Steamship Clerks, etc., 228 F. Supp. 276 (S.D.N.Y.1964), aff'd on other grounds, 340 F.2d 206, 15 A.L.R.3d 933 (2d Cir. 1965), urged upon us by appellant, is inapposite.[5] We therefore hold that venue in the Southern District of New York was proper.

### III.

As a second ground for reversal, appellant argues that Giordani failed to exhaust his internal union remedies before instituting this action. Section 101(a) (4) of the Act provides that a union member may be required to exhaust reasonable procedures for appeal within the union for four months before seeking a remedy in the courts.[6] Appellant contends that since the U.I.U. offered Giordani three courses of appeal, two of which would have resulted in a speedy determination while the third could not provide him with a prompt decision, he should be deemed deliberately to have by-passed the statutory four-month limitation when he chose the latter. To allow a union member to choose a slow method of appeal where speedier alternatives are available, they argue, would subvert the union's laudable effort to provide its members with a forum able to give a prompt determination of their claims.

It is now beyond question that the statutory exhaustion requirement does not give the union authority to compel its members to pursue internal remedies before resorting to the courts, but rather preserves the discretionary exhaustion doctrine as it had been judicially dveloped, subject to the four-month limitation. NLRB v. Industrial Union of Marine & Shipbuilding Workers of America, AFL–CIO, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); Libutti v. Di Brizzi, 337 F.2d 216 (2d Cir. 1964); Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2d Cir. 1961).[7] Appellant suggests that in applying this doctrine we should require a union member to choose from among appeal procedures open to him the one which might render a decision within four months. This we refuse to do. So long as the U.I.U.'s General Laws permitted Giordani to resort to any one of three reviewing bodies, we see no reason to declare that his preference for one over the other two should entail a forfeiture of his statutory right to bring an action in this forum after four months.

---

5. In that case, since all the acts claimed to infringe upon plaintiffs' rights under the Act had transpired in the course of a union election in California, the court rightly held that the alleged violation had occurred there.

6. Section 101(a) (4) provides in part: "No labor organization shall limit the right of any member thereof to institute an action in any court, * * * *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations * * *."

7. Since we find here that Giordani has adequately exhausted his union remedies, we need not decide the question expressly left open in Salzhandler v. Caputo, 316 F.2d 445, 448 n. 4 (2d Cir.), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L. Ed.2d 275 (1963), whether in a case where plaintiff alleges that the union has violated his right of free speech the court should ignore the exhaustion requirement.

In addition, it is important to note here that appeal to the convention was not the first step in Giordani's pursuit of union remedies. Under the U.I.U. General Laws, an aggrieved member may not appeal a decision of the General Executive Board until he has requested that the Board reconsider its decision.[8] After receiving notice of his expulsion by a letter dated August 22, 1967, Giordani made such a request for reconsideration on September 11, and he was not notified of the Board's reaffirmance until he received the Union's letter of December 21. Thus, well over three months were consumed in Giordani's pursuit of union remedies before he was even in a position to decide to which higher forum to appeal. Under all these circumstances we hold that when Giordani filed his notice of appeal to the next U.I.U. convention, he had sufficiently exhausted his union remedies under the Act.

## IV.

Finally, appellant claims that Giordani's expulsion was valid under the Act. Section 101(a) (2) provides in part: "Every member of any labor organization shall have the right * * * to express any views, arguments, or opinions * * * Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." Appellant contends that since Giordani's letter accused not individual union officials, but the International itself of misappropriation, it tended to undermine the U.I.U. as an institution, and therefore was subject to discipline under the proviso. It reasons that since a labor union must retain the loyalty of its members in order to survive, and since one of its most valuable assets in fostering membership loyalty is its good reputation, defamatory charges such as those made by Giordani seriously impair the union's existence and entitle it to take disciplinary action.

We disagree. It is clear, and appellant so concedes, that if Giordani had made the same accusation against the U.I.U.'s officials rather than against the union itself his speech, even if false, would be protected. Salzhandler v. Caputo, 316 F.2d 445 (2d Cir.) cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed. 2d 275 (1963). And the same would be true even if the speech were found to be malicious. Cole v. Hall, 339 F.2d 881 (2d Cir. 1965). Appellant's entire argument therefore turns on the fact that Giordani said "my international union," instead of "the officials of my international union." But obviously, to the extent that Giordani charged the International with misappropriation of funds, that charge must have been against its officials, since a union can take such action only through them. And in any case, we do not believe that so important a right should turn on so fine a distinction. "The basic concern of the statute protecting union member's right to free speech is not in the precise words said, but rather what was being talked about. If the underlying topic of conversation concerns union affairs, then arguments, questions or accusations relating thereto are protected." Nix v. Fulton Lodge No. 2 of Int. Ass'n of Machinists and Aerospace Workers, 262 F.Supp. 1000, 1005 (N.D.Ga.1967). Here the letter in question was part of Giordani's effort to correct what he felt to be serious abuses in the management of the U.I.U.'s welfare and pension funds. We made it clear in Salzhandler that one of the primary purposes of the Act was to curtail such vices as the mismanagement of union funds, and that the protection of union members' right to discussion on this subject is an important safeguard to that end. If unions could discipline such speech on the ground that it weakened their power as an institution, this safeguard would be

---

8. U.I.U. General Laws, art. 34, § 5(q).

rendered entirely ephemeral and ineffectual.

Accordingly, we hold that Giordani's speech was protected under the Act and that his expulsion was wrongful.

Affirmed.