**John J. COLE, Plaintiff-Appellee,**

v.

**Paul HALL, individually and as President et al., Defendants-Appellants.**

**No. 615, Docket 72–1003.**

United States Court of Appeals, Second Circuit.

Argued April 7, 1972.

Decided June 22, 1972.

Burton H. Hall, New York City, for plaintiff-appellee.

Schulman, Abarbanel, Perkel & McEvoy, New York City, (Howard Schulman, New York City, of counsel), for defendants-appellants.

Before CLARK, Associate Justice,* LUMBARD, Circuit Judge, and TYLER, District Judge.**

Mr. Justice CLARK:

This case was here during the September Term, 1964, on an appeal from an order enjoining the defendants pendente lite from excluding appellee, John J. Cole, from membership in the Seafarers International Union of North America. Cole v. Hall, 2 Cir., 339 F.2d 881 (1965). In a unanimous opinion by Chief Judge Lumbard, the panel [Lumbard, C. J., Hays and Marshall, Circuit Judges] affirmed the judgment of the District Court restoring Cole to union membership after he had been expelled in violation of his rights under § 101(a) of the Labor-Management Reporting and Disclosure Act[1] of 1959, 29 U.S.C. § 411(a). Judge Dooling had entered the temporary order in the District Court on the basis that the defendants had infringed Cole's rights under § 101(a) (2) of the Act. In addition, he found that they had also violated § 101(a) (5) of the Act which requires a union to give adequate notice and a fair hearing to a member before disciplining him. Five years later the case came on for trial before Judge Mishler which resulted in a judgment ordering Cole permanently reinstated to membership in the union and restored to all of the financial benefits accruing to such membership and denying Cole's damage claims but granting him counsel fees in the sum of $5500 [the amount being stipulated] against the union. The complaint was dismissed against each of the individual defendants.

1. Appellant union first asserts that the trial before Judge Mishler adduced different facts than did the hearing for a temporary injunction.

---

* United States Supreme Court, Retired, sitting by designation.

** United States District Court for the Southern District of New York, sitting by designation.

1. § 411.(a) (2). Freedom of speech and assembly.

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

However a reading of the findings clearly shows that the trial judge based the judgment against the union substantially on the same grounds upon which Judge Dooling had issued the injunction in 1964 and this court had affirmed. There was additional evidence as to "raiding" engaged in by the competing unions in which the appellant union asserted it was in a "life and death" struggle for survival and that Cole's resolution would seriously undermine its chief function i. e., gaining and retaining jobs for members. The Trial Committee of the union had found that his resolution had threatened the union as an institution by jeopardizing 200 union jobs and recommended the expulsion of Cole. It claimed that the expulsion of Cole was therefore proper under the proviso of Section 101(a) (2) permitting a union to "adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution." However, a reading of the opinion here and the later one of Judge Mishler shows that both are based on substantially the same grounds. As this court held, Cole was not subject to expulsion even though his resolution was held by the Trial Committee to be "malicious vilification" or for that matter, false or libelous as this court pointed out, citing Salzhandler v. Caputo, 316 F.2d 445 (2 Cir. 1963). Moreover, the argument appellant makes now is virtually identical to that rejected in Giordani v. Upholsterers International Union, 403 F.2d 85 (2 Cir. 1968) and Farowitz v. Associated Musicians, 330 F.2d 999 (2 Cir. 1964). This threat was speculative at best. Moreover, even if Cole's resolution had threatened legitimate interests of the union, Congress has struck the balance of interests in favor of protecting the democratic process within unions by insuring freedom for every union member to enter into debate on union activities. Cole was merely expressing his views on current union policy and urging other members to change that policy by adopting his resolution. He urged no individual member to violate union rules or to take any action not approved by the union membership. See Farowitz v. Associated Musicians, *supra*, at 1002. Under these circumstances, then it is manifestly clear that Cole's conduct was protected. "The basic concern of the statute protecting union member's right to free speech is not in the precise words said, but rather what was being talked about. If the underlying topic of conversation concerns union affairs, then arguments, questions or accusations relating thereto are protected." Giordani v. Upholsterers International Union, *supra*, 403 F.2d at 89, quoting from Nix v. Fulton Lodge No. 2, 262 F. Supp. 1000, 1005 (N.D.Ga.1967). For, "[i]f unions could discipline such speech on the ground that it weakened their power as an institution, this safeguard would be rendered entirely ephemeral and ineffectual." *Giordani, supra,* 403 F.2d at 89–90.

■■■ 2. The union also challenges the award of counsel fees. The trial judge in a most comprehensive and persuasive opinion upheld this award on the authority of Gartner v. Soloner, 384 F. 2d 348 (3 Cir. 1967). As he points out, Section 102 of the Act [29 U.S.C. § 412] is silent on the question while Section 201 [29 U.S.C. § 431] and Section 501(b) [29 U.S.C. § 501(b)] specifically provide for the discretionary award of counsel fees. However, the provisions of Section 102, entitled "Civil Enforcement" do authorize the district court to grant "such relief (including injunctions) as may be appropriate." While counsel fees are not ordinarily recoverable in the absence of statutory or contractual authority, Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U. S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967), still three Circuits have upheld the discretionary award of counsel fees in Section 102 cases.[2] There are no

2. Burch v. International Association of Machinists and Aerospace Workers, AFL–CIO, 454 F.2d 1170 (5 Cir. 1971);

Gartner v. Soloner, 384 F.2d 348 (3 Cir. 1967); Johnson v. Nelson, 325 F.2d 646 (8 Cir. 1963).

decisions in any of the Circuits to the contrary, although McCraw v. United Association, 341 F.2d 705 (6 Cir. 1965) is sometimes cited as so holding. However, a close examination of that case reflects that the Court of Appeals did not specifically pass on § 102 but considered instead § 431(c). At p. 711. In Vars v. International Brotherhood of Boilermakers, 215 F.Supp. 943 (D.Conn.1963), counsel fees were not allowed. No appeal was perfected on this point; however, this court on the appeal of the union did affirm that part of the judgment restoring membership rights. In the district courts there are some conflicts, as has been noted; however the majority, including the Southern and Eastern [3] Districts of New York, have awarded counsel fees under § 102. To us the granting of counsel fees here makes sense.

We start with the proposition that the Act clearly protects the right of members of labor unions "to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views `. . . upon any business properly before the meeting . . . " Cole was exercising this very right and was expelled for it. This case—as well as a host of others— attests to the unions' propensity to deprive members of their rights of free speech. The Congress recognized this right as vital to the independence of the membership and the effective and fair operation of the union as the representative of its membership. When Cole brought this suit, he was not vindicating his rights of free speech alone but those of every member of the union as well. Indeed, his success in maintaining this right at union meetings inured to the benefit of union members everywhere. This action by Cole was therefore of

substantial benefit to all of the members of the union. In vindicating his right, he vindicated their right. Johnson v. Nelson, 325 F.2d 646, 653 (8 Cir. 1963). All Cole was fighting to correct and change was a policy of the union, i. e. raiding other jurisdictions, cutting daily wage rates in a price war with other unions, and the reduction in "manning scale" to gain representational power.

These benefits to the union and the labor movement would be lost in most instances without the discretionary authority in courts to grant counsel fees. Indeed, cases vindicating such rights would never be filed. This case is a typical example. It has been pending almost ten years, has been to this court twice, has consumed hundreds of hours of the court time of four trial judges, accumulated thousands of pages of motions, written interrogatories, briefs, arguments, opinions, etc., some 1200 pages of testimony, two panels of judges of this court and literally thousands of hours of counsel time. The record shows that it took six months for Cole to secure his temporary injunction, largely because of the dilatory action of the union and its officers; seven years to get his trial and now two years to obtain the final vindication of a right not only specifically secured to him in the Act itself but fundamental to a free society as well. Had it not been for the devotion of his counsel largely on a *pro bono publico* basis, Cole would not have ever attained this basic right. Not to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose. It is difficult for individual members of labor unions to stand up and fight those who are in charge. The latter have the treasury of the union at their command and the paid union coun-

---

3. The union points to the action of Judge Bartels in granting its motion to strike the counsel fee claim in Cole's complaint as creating a split in the Eastern District. See 35 F.R.D. 4, E.D.N.Y. (1964). We think not. The record indicates that Judge Mishler, after speaking to Judge Bartels, granted counsel fees. In central calendar districts such situations often happen, and the final ruling is considered the law of the case. No ruling is taken as final until the final judgment is entered.

sel at their beck and call while the member is on his own. Congress passed the Act in an effort to offset the heavy hand of the union by giving the union member the aid of the federal courts. It is true that it did not specifically grant counsel fees, but it did authorize the courts to grant "such relief as may be appropriate." Counsel fees in cases of this kind are not only appropriate, they are imperative to preserve the Congressional purpose. An individual union member could not carry such a heavy financial burden. Without counsel fees the grant of federal jurisdiction is but a gesture for few union members could avail themselves of it. It is but equitable and fair that counsel fees in appropriate cases be awarded just as the union pays those of the officers and of itself in Section 102 litigation. As the Third Circuit said in Gartner v. Soloner, *supra:*

> "In the context of the Labor Management Act it is untenable to assert that in establishing the bill of rights under the Act Congress intended to have those rights diminished by the unescapable fact that an aggrieved union member would be unable to finance litigation and would have no hope of remuneration even if he could some way or other proceed with his suit." 384 F.2d at 355.

The union notes that Senator Goldwater and others opposed the bill because it failed to specifically permit the award of counsel fees. Leg.Hist.Vol. II, p. 1281, dissenting House Report p. 2492 (1959) The 3rd Circuit has a complete answer to this. 384 F.2d at p. 351. As we see it, the supporters of the Bill thought that its language was so broad that it would give "a wide latitude to grant relief according to the necessities of the case," Id. Vol. II, p. 1584 (1960), to cover "any loss suffered by a member." Id. at p. 1632. This is sufficient for us to include the awarding of counsel fees here. It is quite often necessary to graft a judicial remedy to give legislation its intended fruition.

The union also argues that, considering the Act as a whole, we should conclude that Congress has "meticulously detailed the remedies available to a plaintiff" intending thereby to "mark the boundaries of the power to award monetary relief." Fleischmann Distilling Corp. v. Maier Brewing Co., *supra,* 386 U.S. at 719, 721, 87 S.Ct. at 1409. In particular, it notes, as we have indicated, that counsel fees are specifically provided for in other sections of the Act, 29 U.S.C. §§ 431(c), 501(b), thus suggesting that they were consciously omitted from this section. But this is a *non sequitur* here. These sections have to do with narrowly defined remedies such as the examination of books and records and an accounting. Here the relief necessary cannot be as easily foreseen nor broadly specified which accounts for the unlimited language of the Congress in § 102 i. e. "such relief as may be appropriate."

3. The union argues finally that, even if counsel fees may sometimes be recovered under Section 102(a) (2), it was an abuse of the district court's discretion here because appellee's services were furnished *gratis.* We need not consider this argument, since the record shows that, rather than the A.C.L.U. bearing any of the cost, Cole and his counsel bore the cost of the litigation themselves.

For these reasons, the judgment is

Affirmed.