Max SANDS, as Administrator of the Estate of Solomon Salzhandler, Deceased, Plaintiff,

v.

Peter J. ABELLI, as President, etc., and Isadore Webman, individually and as President, etc., Defendants.

No. 61 Civ. 2110.

United States District Court
S. D. New York.

Aug. 28, 1968.

---

8. Muriel Sandusky, Trustee in Bankruptcy.

Burton H. Hall, New York City, for plaintiff.

Henry J. Easton, New York City, for defendants.

CANNELLA, District Judge.

Action pursuant to 29 U.S.C. §§ 411(a)(2), 412 and 529 to recover damages.

The sole issue before this court [1] is the assessment of damages arising out of the acts which form the basis for this suit. It is unnecessary to duplicate the factual presentation upon which the Court of Appeals predicated its decision and this will be avoided except to the extent required for a cogent treatment of the questions of damages as presented by the various claims.

Suffice it to say that Mr. Salzhandler, a member of Local 442, had accused Mr. Webman, the then President of said Local and Business Agent of District Council 9, of improper financial activities. Webman filed charges against the plaintiff with the District Council Trial Board and had Salzhandler stripped of office and suspended from union activities for five years. Salzhandler sued in District Court, and after a trial and dismissal, the Court of Appeals reversed the lower court and directed entry of judgment and assessment of damages. This Court acting non-jury, heard evidence on the question of damages.

Plaintiff claims the following damages as to defendant District Council 9: (1) loss of wages as a painter; (2) compensatory damages arising out of the assault and battery of May 15, 1961; (3) compensatory damages for mental suffering caused by the wrongful disciplinary action; (4) compensatory damages for the stroke and subsequent paralysis; (5) exemplary damages; (6) counsel fees.

In addition, plaintiff asserts a claim against Local 442 for lost wages as financial secretary.

Finally, plaintiff claims compensatory and exemplary damages against Isadore Webman.

The plaintiff, also, urges this Court to consider the existing New York law in this area and to invoke its pendant jurisdiction to grant relief if it is determined that the Labor-Management Reporting and Disclosure Act (Landrum-Griffin Act, hereinafter LMRDA) [2] does not provide an adequate remedy in all respects.

The threshold question presented is whether by reason of the death

1. Reversed sub nom., Salzhandler v. Caputo, 316 F.2d 445 (2 Cir. 1963). The Court of Appeals reversed the order of Wham, J. dismissing the complaint after trial, and remanded the case to the District Court for assessment of damages.

2. 29 U.S.C. §§ 401–531 (1959).

of the plaintiff [3] and substitution of the Administrator of his estate, the claims asserted abate. This Court determines the issue in the negative. The very direction of the Court of Appeals would appear to preclude a finding otherwise. "We * * * direct entry of judgment for the plaintiff * * *." [4] The assessment of damages does not for purposes of abatement render the action in a state of pendency at the time of death.

■■■ Assuming, *arguendo*, the pendency of the action at the time of death the case for abatement fails on other grounds. Although there appears to be no case squarely on point under the LMRDA, the better reasoned cases hold that where a federal statute grants a right to an individual, whether it be deemed a personal or property right, to deny the remedy on the theory of abatement would be, "perpetuation of a policy which has now had its day." [5] Without belaboring the point, the sound approach is clearly in favor of survivorability where, as here, the statute is designed to have a deterrent effect. Were the Court to hold otherwise, the incentive for discipline of a more permanent nature would be manifest.

■■ Turning to the substantive claims, the Court will consider first the plaintiff's claim for loss of salary as Financial Secretary of Local 442. The plaintiff urges this claim against the Local alleging total damages of $6,755.00 for the period April 1, 1961 to December 14, 1964. The defendant contends that the LMRDA grants no right to union officers who seek to recover lost salary arising out of said position, albeit, such loss is incident to wrongful disciplinary action by the union. The Court is not persuaded by this argument. On the con-

trary, the better reasoned cases hold that where wrongful disciplinary action results in a loss, appropriate relief will be granted by the courts.[6] The defendants would construe the statute in so strict a fashion as to leave without its protection union officers, the very people who perforce of their particular knowledge and associations are most capable of participating meaningfully in the democratic process within the union. This was not the intent of the Act, and this the Court will not do.

The Court finds by the fair preponderance of the credible evidence that the plaintiff, now deceased and represented by the Administrator of his estate (hereinafter "plaintiff") suffered damages of lost salary as Financial Secretary of Local 442 as a proximate result of the said wrongful discipline imposed. Accordingly, the loss is determined to be $1,625.00, computed as follows, $25.00 per week for sixty-five weeks beginning on or about April 2, 1961, the date of his removal, and terminating on June 30, 1962, which would have been the last day of his tenure in office.

■ The plaintiff sought to establish that an additional $10.00 per week "expense money" was, in fact, an additional salary payment. Further, it was claimed that had Mr. Salzhandler not been disciplined in the fashion in which he was, his re-election for another three year term as Financial Secretary was virtually assured. The Court is not persuaded on either issue. Damages must be more than a mere speculative loss, and must be shown to have been proximately caused.

■ The Court finds that the plaintiff has failed to meet his burden of proof on the issue of "expense money."

3. December 14, 1964.

4. Salzhandler v. Caputo, 316 F.2d at 451 (April 23, 1963).

5. Van Beeck v. Sabine Towing Co., 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685 (1937). Cf. Horner v. Ferron, 362 F.2d 224 (9 Cir. 1966); Dellaripa v. New York, New Haven and Hartford R. Co., 257 F.2d 733 (2 Cir. 1958); Pritchard v. Smith, 289 F.2d 153, 88 A.L.R.2d 1146 (8 Cir. 1961).

6. Grand Lodge, etc. v. King, 335 F.2d 340 (9 Cir. 1964); George v. Bricklayers, Masons and Plasterers International Union, 255 F.Supp. 239 (E.D.Wis.1966).

Once relieved of his post, Mr. Salzhandler was also relieved of whatever expenses and obligations accompany that responsibility. The court is not persuaded by a fair preponderance of the credible evidence that the $10.00 per week designated as "expense money" was intended to compensate the plaintiff for anything other than that.

With respect to the issue of the possible outcome of a future election, in the year 1968, this Court hardly need dwell on the speculation involved in attempting to foresee electoral developments with any degree of certainty. Accordingly, the Court determines that no compensable damages were incurred by virtue of loss of "expense money" or the opportunity for an additional term in office.

The Court will consider next the claim against District Council 9 for loss of wages as a painter resulting from the wrongful discipline imposed. A literal reading of the discipline statement [7] would lead one to believe that it was in no way intended to affect the plaintiff in the pursuit of his trade as a painter. Upon all the credible evidence the Court finds the very opposite to be the fact. The District Council intended to and succeeded in denying the plaintiff employment in his trade. Based on the testimony, their discipline was calculated to and in fact did accomplish a "blacklisting" of Mr. Salzhandler in the painting trade. This had been his chosen occupation for some twenty-seven years, during all of which time he had been a member in good standing of said Union. That this type of action constitutes wrongful "discipline" cognizable under the Act, is no longer open to debate.[8]

The defendants contend that Mr. Salzhandler would have retired in the normal course of events in 1961, and, therefore, even if they were instrumental in "blacklisting" him, there was no real loss. This account of the facts simply will not stand the test of careful examination. At the outset it is interesting to note that Mr. Salzhandler applied to the Court of Appeals for and received permission to pursue his appeal from Judge Wham's dismissal *in forma pauperis*. Such a financial condition would hardly seem to be the choosing of a man whose work record was unblemished for over twenty-seven years. But this Court need not speculate as to Salzhandler's intentions. There was ample testimony to persuade the Court by a fair preponderance that Mr. Salzhandler was actively seeking work during the period after the wrongful discipline. His efforts to obtain employment on his own initiative and through the business agents of District Council 9 who should have been the proper source of employment, proved fruitless. There is no question but that this development was the direct result of said discipline; and that such a result was intended by the discipline and subsequent "decision," notification of which was communicated to all members of the Local and to other Locals in the District. The record also contains evidence that such information was known to employers, and that as a consequence of all of this, employment in the painting trade was unavailable to Mr. Salzhandler. Upon the totality of the evidence the court finds that the dramatic decline in Mr. Salzhandler's earnings was the direct and proximate result of the wrongful discipline imposed by District Council 9. The Court finds Mr. Salzhandler's retirement in 1961 nothing more than an attempt on his part to mitigate damages.

Accordingly, the Court determines that the plaintiff be awarded compensatory damages for loss of wages incurred during the period from April 2, 1961 to February 28, 1963, the date on which Mr. Salzhandler suffered a stroke. Computing this on an annual basis of $5,200.00 per year, which the prior work records indicate to be the approximate average rate of income of the plaintiff during the immediately preceding years, the dam-

---

7. Salzhandler v. Caputo, 316 F.2d at 448.

8. Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2 Cir. 1961).

ages amount to $9,900.00 or 99 weeks at $100.00 per week. Although the painting trade is not one in which a weekly salary of a fixed amount is the normal occurrence, after averaging prior income figures, the Court finds this to be the loss based on the credible evidence. ·

During this entire period, the plaintiff's only earnings received from the painting trade was $232.96. There will be a reduction in this amount by way of mitigation. In addition, there will be a reduction made in whatever amount is appropriate for payments received by Mr. Salzhandler from the Painting Industry Pension Fund and the Social Security Administration.[9] Clearly, the plaintiff would not have qualified for these payments if he had continued his employment. Under these programs the recipient is barred from receiving benefits if his earnings are in excess of $1,200 per year or $100.00 per month. This reduction is dependent of course upon the waiver, where necessary, of repayment of said benefits to the funds. If repayment is required to any extent, no reduction will be permitted and damages will be fixed at the stated loss, less earnings recorded for the period.

The Court will turn next to the assault and battery Mr. Salzhandler sustained at the hands of Isadore Webman, the then President of Local 442 and one of the Business Agents of District Council 9. In this connection, the Court will consider these acts in light of the dual claims being pressed by counsel. After the decision of the Trial Board of District Council 9 suspending Mr. Salzhandler from participating in union activities, although not expelling him, for a period of five years and removing him from office, Webman appointed Morris Kronstadt to Salzhandler's post temporarily. Thereafter, Webman called a meeting on May 15, 1961 for the purpose of inviting nominations of candidates wishing to fill the office of financial secretary for Salzhandler's unexpired term.

On the evening in question Salzhandler proceeded to the union hall. Laboring under a direction not to attend union meetings, he remained outside the meeting room. The defendant Webman came out of the meeting room and into the hall. He, thereafter, threatened and physically manhandled the sixty year old Mr. Salzhandler, until restrained by on-lookers. The defendant's account of the facts is somewhat in contradiction to the foregoing, however, there was testimony by several witnesses to the incident who appeared and the Court is convinced by a fair preponderance of the evidence that the assault and battery did take place. In fact, the incident itself is not controverted, only certain details were contested.

The question remaining is whether such acts were the direct and proximate result of the discipline imposed by the defendant Council through its Trial Board. This the Court cannot find from the evidence. There is nowhere any indication that the defendant District Council knew or contemplated that its decision would be carried out by the use of force. Similarly, the Local did not so authorize its President. Even if such were the case that question is not before us in light of the events which took place. The incident occurred prior to a meeting and Webman left the meeting room and sought out the plaintiff. The Court does not consider what might be its holding if the plaintiff had defied the "decision" and entered the meeting room.[10] Here the facts are clear. Webman sought out the plaintiff. This sixty year old man was not a physical threat to be dealt with lest he break into the meeting and do harm. Salzhandler had offended Webman by charges he had made concerning the President's honesty. Webman was angry with him and was going to do something about it. Webman abandoned his official duties in the

---

9. Ryan v. Internationl Brotherhood, etc., 387 F.2d 778 (7 Cir. 1967).

10. McCraw v. United Ass'n of Journeymen, etc., 216 F.Supp. 655 (D.C.Tenn.1963).

meeting room and went out into the public hallway and confronted Salzhandler. He intimidated him; threatened him; pushed and shoved him; and hit him until he was restrained by on-lookers. There was no official reason for this activity. It was not part of the discipline, although admittedly the events which preceded it related to union activities. Accordingly, this Court finds that the assault and battery were not proximately caused by the discipline and that neither District Council 9, nor Local 442 is responsible for any damages arising therefrom; nor can it be said that Webman in his official capacity as President of Local 442, is liable for acts he performed after he abandoned that post.

 However, having arrived at that determination, the Court turns to the request that it invoke its pendant jurisdiction to fully dispose of all issues arising out of the facts of which the plaintiff complained. The Court is mindful that nothing under this section of the Act is designed to limit whatever state or federal rights otherwise exist,[11] and will dispose of all claims.[12] Accordingly, based on the foregoing facts and by a fair preponderance of the credible evidence the Court finds that the defendant Webman did assault and batter the plaintiff on May 15, 1961. Therefore, the Court finds him liable under New York law for this intentional and unlawful threat and use of force upon the person of the plaintiff. Further, it finds the damages for both physical and mental suffering arising out of these acts to be $1,000.00.

The Court turns next to the claim against District Council 9 for "appropriate relief" arising out of the physical and mental suffering of the plaintiff. On trial the plaintiff sought to prove by expert medical testimony that as a result of the aforementioned acts, Mr. Salzhandler suffered great mental anguish, a subsequent stroke and paraly-

sis. The defendants' expert witness, while conceding that any individual would experience some emotional reaction, found this to be inconceivable. As is not unusual when questions of this type are presented, the medical testimony was diametrically opposing on the question of causality of Mr. Salzhandler's stroke and paralysis.

The plaintiff presented Mr. Salzhandler's children and friends who testified to his identifiable depression after the incidents described. They testified to his energetic and constant interest in the affairs of Local 442 over a period of more than twenty-five years. They testified to his many friends in the union and his total depression when, as a result of the "blacklisting", his friends were afraid to be seen with him, stopped visiting the Salzhandler home, and publicly heard him denounced in the union hall.

 The Court finds by fair preponderance of credible evidence that the plaintiff, a man of sixty who had been active in union affairs for over twenty-five years experienced substantial mental suffering when he was wrongly removed from office and suspended from any union activity for a period of five years. Further, the Court finds that the plaintiff has failed to meet his burden in making a case for the proposition that the discipline was the competent producing cause of the stroke and paralysis. Accordingly, the Court finds the damages for mental suffering and humiliation to be $2,500.00, and awards said amount to the plaintiff as against defendant District Council 9.

 The Court next turns to the claim for exemplary damages against District Council 9, Local 442, and Isadore Webman. Where actual malice or reckless indifference to the rights of a union member has been displayed, an award of punitive damages has been held to be proper in this district.[12] While there is

---

11. 29 U.S.C. § 413.

12. Cole v. Hall, 35 F.R.D. 4 (E.D.N.Y. 1964).

12. Farowitz v. Associated Musicians of Greater New York, Local 802, 241 F. Supp. 895 (S.D.N.Y.1965).

some disagreement on the subject,[13] the better reasoned cases would permit such a recovery on the theory that the award of exemplary damages in appropriate cases serves as a deterrent to those abuses which Congress sought to prevent.[14]

In the instant case, the officers and Trial Board of District Council 9 knew, or should have known, that their action in disciplining Salzhandler with all the ramifications which they intended such discipline to have, would substantially destroy this elderly plaintiff, who had devoted the better part of his working life to this very organization. He was to be removed from office, deprived of the means of supporting his family, humiliated and ostracized by his union associates. This type of discipline would be indefensible under any circumstance, but when viewed against the backdrop of the facts of this case, the malice and forethought become pronounced.

The argument is made that the courts should not prejudge the union as "bad guy"[15] and that some latitude should be allowed since the union is not a "market place of ideas".[16] Further, that in the first instance, due consideration should be given to the union loyalty of the one asserting free speech rights. While the Court is not unmindful of this obligation under the LMRDA, the instant case presents a clear factual situation in which Salzhandler was victimized by the District Council and Isadore Webman. There is no question in this case of discipline being required to prevent great harm to the union organization as such. Salzhandler's loyalty to the union was never questioned. The malicious and thorough "discipline" imposed on him by the District Council and Webman was caused by nothing more than personal animosities. Salzhandler spoke and made charges in writing. If he acted improperly, reasonable remedies were available. Webman, using union machinery, attempted not only to silence Salzhandler, but to totally eliminate him from the industry. The District Council, by its Trial Board, actively assisted Webman in this objective. While it may be true that a union hall is not a "market place of ideas", it is equally true that the oppressive use of "discipline" will quickly destroy the fabric of American Unionism. Accordingly, the Court finds that the defendants District Council 9 and Isadore Webman, did with malice and reckless disregard for the rights of this plaintiff, wrongly impose discipline as heretofore stated. An award of exemplary damages is, therefore, fixed in the amount of $6,000.00. The court does not consider whether this award would be proper if Mr. Salzhandler's death had preceded the decision and entry of judgment by the Court of Appeals.

Finally, the Court turns to the plaintiff's claim for counsel fees. The complainant would have this court award additional damages under a broad interpretation of statutory language "appropriate relief."[17] This the defendant asserts may not be granted, citing *Vars v. International Brotherhood of Boilermakers*, etc.[18] In opposition, the plaintiff directs the court to *Gartner v. Soloner*,[19] a recent case which exhaustively considered the question and came to an opposite conclusion. Judge McLaughlin, after a careful analysis of the Legislative History and the existing court decisions including the aforementioned, determined that the U. S. District Courts, "have the discretionary

13. Cole v. Hall, supra.

14. International Brotherhood of Boilermakers, etc. v. Braswell, 388 F.2d 193 (5 Cir. 1968).

15. Kroner, Title 1 of the LMRDA: Some Problems of Legal Method and Mythology, 43 N.Y.U.L.Rev. 292 (1968).

16. *Id.* at 283.

17. 29 U.S.C. § 412.

18. 215 F.Supp. 943 (D.Conn.1963); aff'd 320 F.2d 576 (2 Cir. 1963); McCraw v. United Ass'n of Journeymen, etc., 216 F.Supp. 655 (E.D.Tenn.1963); and Cole v. Hall, 35 F.R.D. 4 (E.D.N.Y.1964).

19. 384 F.2d 348 (3 Cir. 1967).

power, and may, where they deem it proper, award reasonable counsel fees to union members who have in good faith pursued their rights under Title I of the Act."[20]

The suggestion that the rule in this Circuit is contrary, just does not withstand the test of analysis. The supposed basis for such a contention is the District Court's decision in *Vars*, supra. The Honorable T. Emmet Clarie, after examining the House Report concluded that Congress had considered the question and rejected it. Judge Clarie went on, however, to suggest that, "[n]o issue has been raised in this litigation that the defendant's actions were motivated by willful malice nor has any claim been made for exemplary damages because of malice. Counsel fees and expenses are not compensible and are, hereby, denied."[21] That statement standing in the context of the court's ruling, gives guidance as to its reason for so holding. It is reasonable to assume that a different result might have obtained if, as in this case, malice were present. On appeal, the issue of counsel fees was not raised. In the absence of a clear determination of the issue in this Circuit, this Court adopts the reasoning of *Gartner v. Soloner, supra,* and determines that it has discretionary power to award reasonable counsel fees under 29 U.S.C. § 412 (LMRDA § 102) to union members who have in good faith pursued their rights under Title I of the Act.

Further, the Court is not unmindful of the reasoning which motivated the Oregon Supreme Court when it was faced with a similar issue under state law.

"If those who wish to preserve the internal democracy of the union are required to pay out of their own pockets the cost of employing counsel, they are not apt to take legal action to correct the abuse. The elimination of improper practices in union affairs benefits not only the plaintiff who initiates the suit, but also inures to the members of the union and the public as well. The cost of employing counsel should not be visited upon the persons who bring the suit and prevail."[22]

The instant case involving among other things, the malicious and wrongful acts of the defendant District Council and Webman, is such a case as this Court determines to be appropriate for granting of an award of counsel fees. The efforts of this plaintiff unquestionably resulted in a benefit to his union. To require him or his family to bear alone the financial burden of this litigation might discourage others in the labor movement from defending their rights.[23]

With reference to fixing an amount of counsel fees, the Court finds that the plaintiff in conducting this litigation, required the active assistance of counsel for a period of some seven years. During this period, counsel argued numerous motions, was involved in pretrial conference and procedure, conducted a trial, an appeal to the Circuit Court of Appeals where a reversal of the District Court's dismissal resulted, was returned to the trial calendar, sustained additional pretrial involvement, and a second trial.

In consequence of which, this court finds reasonable counsel fees to be $5,000.00 and awards counsel fees in that amount against District Council 9 and Isadore Webman as President of Local 442.

So ordered.

20. *Id.* at 356.

21. Vars v. International Brotherhood of Boilermakers, etc., 215 F.Supp. at 952.

22. Gilbert v. Hoisting & Portable Engineers, Local Union No. 701, 237 Or. 139, 390 P.2d 320, 9 A.L.R.3d 1042 (1964).

23. It is interesting to note that recently there has been, by way of election, a replacement of leadership in the District Council.