Harold ROBINS, Plaintiff,

v.

Frank SCHONFELD et al., Defendants.

No. 63 Civ. 1017.

United States District Court,

S. D. New York.

April 28, 1971.

Burton H. Hall, New York City, for plaintiff.

Easton & Echtman, New York City, for defendant District Council 9; Henry J. Easton, New York City, of counsel.

Michael A. Buonora, New York City, for defendants Thomas Giunta and Local 892.[1]

## OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW

LEVET, District Judge.

Plaintiff, Harold Robins ("Robins"), instituted this action under Titles I, IV and VI of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401 et seq. Jurisdiction is conferred upon this court by §§ 102, 401 and 609 of the Act, 29 U.S.C. §§ 412, 481 and 529.

Plaintiff contended that certain disciplinary action taken by defendant, Local Union 892, International Brotherhood of Painters and Allied Trades ("Local 892") and defendant, District Council No. 9, International Brotherhood of Painters and Allied Trades ("District Council 9") suspending Robins from certain membership rights, to wit, the right to attend or vote or to speak at the local union meetings, the right to take the floor at any local meeting, and the right to be a candidate in any local election, was illegal. The complaint in its prayer for relief sought to declare the aforesaid actions of the defendants to be null and void, to enjoin the defendants from attempting to enforce the said punishment or discipline and to restrain the defendants from interfering with plaintiff's rights to participate in union affairs, as well as seeking an award of damages and other relief.

After the institution of this action and a motion by plaintiff for preliminary injunctive relief, the defendants entered into a stipulation on May 7, 1963 restoring plaintiff to his membership in the said union subject to certain conditions relative to the Court of Appeals decision in Salzhandler v. Caputo, 316 F.2d 445 (2nd Cir. 1963).

By reason of the restoration to membership of plaintiff any equitable relief sought is now moot. Consequently, the sole issues in this case are (1) whether defendants are liable to plaintiff, and (2) if so, what are the damages which have been proved in this action.

Plaintiff claims compensatory damages in the sum of $100,000 and punitive damages in a like sum. Defendants dispute both liability and damages.

After hearing the testimony of the parties, examining the exhibits, the pleadings and the Proposed Findings of

---

1. After trial a question arose as to which attorney was representing the defendant, Local 892. Mr. Easton and Mr. Buonora each contends that the other represented the local union. Mr. Buonora filed appearances for all three defendants on November 12, 1964 and again on November 18, 1966. On October 31, 1965, Mr. Easton, Mr. Buonora and Frank Schonfeld, Secretary-Treasurer of defendant District Council 9 entered into a stipulation which was apparently filed with this court on October 16, 1970 (the docket sheet shows such an entry, although the original copy of the stipulation is missing from the file). Pursuant to this stipulation, Mr. Easton was substituted as attorney only for the defendant Secretary-Treasurer of District Council 9. Mr. Buonora thus remains counsel of record for Local 892.

Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Defendant District Council 9 is a labor organization and a representative of employees for collective bargaining and maintains its principal office within the jurisdiction of this court; it is an unincorporated association to which are affiliated several subordinate bodies known as local unions, one of which is Local 892, also a defendant herein. (Pretrial Order,[2] par. 3(a) (1))

2. The local unions, composed of painters and affiliated with District Council 9, have a combined membership of about 6,000; these members are represented for collective bargaining purposes by District Council 9 and are governed by collective bargaining agreements entered into between District Council 9 and various employers. The materials used by these members in their work as painters subject to the collective bargaining agreements are imported in large part from outside New York State and to some degree from foreign countries. It is thus apparent that the industry in which District Council 9 is engaged as a labor organization is one affecting commerce (10–12).[3]

3. Robins has been a painter since 1946 and a member of Local 892 since 1947 (12, 35–36).

4. Defendant Giunta was president of Local 892 at all times material to this action and for a period running from 1951 or 1952 to approximately 1964 (PTO, par. 3(a) (2); 206, 229).

5. Certain elections were conducted by Local 892, administered by the officers thereof, on June 5, 1961 and on June 19, 1961. In one of these two elections Robins was a candidate for Local 892's nomination for Secretary-Treasurer of District Council 9, running in opposition to the incumbent Secretary-Treasurer (who was also a member of Local 892 and a candidate for its nomination). In the other, Robins ran as a candidate for the presidency of Local 892 in opposition to Giunta, the incumbent president (PTO, par. 3(a) (4); 12–14, 16).

6. Following the June 5, 1961 election, Robins protested, by letter addressed to Giunta, that violations of fair electoral procedure had occurred in the June 5 election and, in the same letter, asked that with regard to the June 19 election the procedures be changed in certain ways so as to prevent a repetition of the same violations. These violations complained of related to such matters as electioneering in the voting room, election booths that were not properly curtained off, the handling of marked ballots by a local union officer prior to their being deposited in the ballot box, and similar matters. (PTO, par. 3(a) (5); PX[4] 2; 76–81).

7. Robins' letter protesting violations committed in the June 5, election was handed by Robins to Local 892's secretary prior to the June 19 election, but Giunta, as president, directed the secretary not to put it in the minutes (15).

8. After the second election Robins again protested by letter to Giunta that violations of fair electoral procedure had occurred; he carried this protest to the District Council and to the parent International's General Executive Board. He also raised the question at membership meetings of Local 892 and proposed a correction for the abuses in election procedures (PTO, par. 3(a) (5); 17).

9. Giunta thereafter threatened Robins that unless he, Robins, stopped criticizing the electoral procedure and Giunta, Giunta would file charges against Robins (214–216).

---

2. Hereinafter "PTO."

3. Unless otherwise designated, numbers in parentheses refer to pages in the stenographer's trial minutes.

4. Plaintiff's exhibits will be referred to as "PX ——" and defendants' exhibits as "DX——."

10. On June 21, 1962, a year after the elections had been conducted, Giunta filed charges against Robins under the disciplinary procedure provided by the Brotherhood's Constitution (PX 13, §§ 267, 270), complaining of Robins' criticisms at membership meetings of Local 892. By filing the charges, Giunta initiated the District Council's disciplinary proceedings against Robins (PTO, par. 3 (a) (6); 89; PX 1).

11. The president of District Council 9 appointed a trial committee of five persons, one of whom held a stewardship to which he had been appointed by Giunta, to try Giunta's charges against Robins. Hearings were held on September 12, October 3, and December 12, 1962. On or about February 5, 1963, the trial committee filed its report suspending Robins for three years from certain membership rights, namely the right to attend or to vote or to speak at his local union's meetings, the right to take the floor at any local meeting and the right to be a candidate in any local election (PTO, pars. 3(a) (7), (8) and (9); 21, 62–63; PX 2, 4, 5, 10, 11).

12. Prior to bringing this action, but after the imposition of punishment, Robins exhausted all remedies reasonably available to him within Local 892, District Council 9, and the parent International Union 31–32; PX 6, 7).

13. Subsequent to the bringing of this action, plaintiff moved for preliminary injunctive relief from the disciplinary punishment. After the serving of notice of such motion but before the actual argument thereof, a stipulation was entered into between counsel for plaintiff and counsel for defendants restoring plaintiff pendente lite, subject also to any alteration, reversal or modification in the decision of the Court of Appeals in Salzhandler v. Caputo, supra, to his rights of membership in Local 892 and District Council 9, and that stipulation was so ordered by the court (33–34; PX 8). The aforesaid disciplinary action imposed by District Council 9 caused plaintiff to miss one local membership meeting (184) and he was effectively suspended for only two weeks (61).

14. Robins had worked as a painter under District Council 9's jurisdiction since 1946 without a substantial break in employment prior to the disciplinary proceedings against him. He had never been discharged for incompetence. Prior to the disciplinary proceedings and punishment he had worked for as many as forty or fifty employers on painting jobs, on several occasions running the job as foreman. He was known to be a skilled and able painter. During the five years immediately preceding the disciplinary action (i. e., 1958–1962), his earnings averaged $3,300 per year (37–38, 65, 287; PX 14).

15. For a period of five years until August 1962, Robins worked for one employer on a regular basis until that employer went out of business. Robins then went to work for another employer, also in August 1962, with the recommendation of the first employer. He worked for the second employer until he was laid off on October 19, 1962 (50–51, 113).

16. Except for the period of two and one-half months at the beginning of 1963 during which a hiring hall was in operation, members of defendant unions could seek work in the painting trade by three methods: they could approach employers directly and ask for work; they could learn about jobs from other workers; or they could approach the business agent, secretary-treasurer or other official of District Council 9 and ask to be assigned to work (58, 275–276).

17. During the period after his layoff in October 1962 but before the institution of the hiring hall in January 1963, and again following the termination of the hiring hall on March 14, 1963, Robins sought work by all these methods; he approached directly some twenty or more employers and was told by some that he would be called for employment; he sought work by speaking with other members about job opportunities; and he approached the business agent of District Council 9 for Local 892 as well

as the assistant secretary-treasurer of District Council 9 (43–50, 58, 62–68, 115–116, 118–119).

18. Among the employers to whom Robins applied for employment were several for whom he had previously worked and for whom he worked subsequently, in 1965 or thereafter; of these, several had need of his services and abilities and told him so. Nevertheless, he was unable to find work by this (or any other) method, and was not called by any employer for work (despite assurances from several that they would do so) until the call by virtue of which he was hired in September 1965 (63, 64–66).

19. After the termination of the hiring hall and after the entry of the stipulation restoring him to full rights in the union, Robins approached Alfred Scardino, Business Agent of District Council 9, for employment. Scardino was the business agent elected by Local 892 and, hence, the appropriate one for Robins to approach. When Robins approached him for a job, however, following the restoration of his membership rights in 1963, Scardino, employing rude and obscene language, told Robins that he would not help him. Robins also approached Morris Arber, Assistant Secretary-Treasurer of District Council 9, for a job but was unsuccessful (59–61, 127–128).

20. Plaintiff Robins' inability to find work during the years 1963, 1964 and 1965 was a direct and proximate result of a "blacklisting" of Robins in the painting trade by the officials of District Council 9 (see discussion, infra).

21. District Council 9 together with the employers with whom it engages in collective bargaining operates a pension plan which allows to members reaching the age of 65 with at least 25 years service credit a monthly benefit of $130. Robins, who is 63, has earned a year of service credit from (and including) 1947 to (and including) 1970, except for the years 1958, 1963, 1964 and 1965. For the years last mentioned, he failed to earn the credit because his earnings were, in each of those years, below the figure set by the fund as a minimal earnings requirement for such credit. Moreover, the pension fund's regulations provide that if, for any consecutive three-year period a member does not earn at least one year service credit, all his prior service credit is cancelled. As a result, Robins' failure or inability to earn service credit for 1963, 1964 or 1965 cancelled the fifteen years service credit he had accumulated prior to 1963. This loss of pension credit was a direct and proximate result of the "blacklisting" of plaintiff by defendants which prevented him from obtaining work in 1963, 1964 and 1965 (124; PX 14; Cf. discussion, infra).

## DISCUSSION

The crucial issue as to liability in this case brought under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 401–531 was determined by the Court of Appeals in Salzhandler v. Caputo, 316 F.2d 445 (2nd Cir. 1963). There the court held that allegedly libelous statements regarding the handling of union funds by union officials did not justify disciplinary action against the member who made the statements in that the LMRDA protects the union member in the exercise of his right to make such charges without reprisal from the union. The Court of Appeals determined that any provisions of the union constitution which made such criticism subject to union discipline were unenforceable and that the Act allowed redress for such unlawful treatment.

■ In the case at bar the facts are almost identical except that the charges made by the union member here related to union election procedures rather than the handling of union funds. The plaintiff, Robins, made a series of charges that violations of fair electoral procedures had occurred in two union elections and he asked that the election procedures be changed in certain ways so as to prevent a repetition of the same violations. Disciplinary action was taken by the defendant union against

Robins, including exclusion from participation in certain affairs of the union.

Robins' charges against Giunta and the union leadership were an exercise of his rights as a member of the union and the action taken against him by defendants was in violation of the LMRDA. Thus, he is entitled to relief against those defendants under the Act.

The more difficult question is that of just what sort of relief should be granted to Robins. Robins requested four specfic elements of damages:

1. Compensation for injury to his reputation and consequent emotional suffering;

2. Compensation for loss of earnings;

3. Punitive damages;

4. Attorney's fees.

As to the first element of damages, we need say nothing more than that there was no evidence introduced at trial to indicate that plaintiff sustained damages to his reputation or sustained any mental or emotional suffering as a result of any of the acts of which defendants are charged.

As to the claim for lost earnings, there is no dispute that Robins was without work from the date of imposition of the union discipline on February 5, 1963 until September 1965. However, the union discipline depriving plaintiff of certain of his voting and membership rights lasted only two weeks. The question is whether there was sufficient proof at trial to sustain a finding that Robins' failure to find work during the more extended period from 1963 to 1965 was proximately caused by some form of union "blacklisting" on the part of defendants.

 This court finds that there was sufficient circumstantial evidence to sustain the claim that plaintiff's inability to find work during the aforementioned period was proximately caused by union "blacklisting." That the court places great weight on circumstantial evidence is, of course, quite proper. Circumstantial evidence is on no different or lower plane than other forms of evidence. Klepal v. Pennsylvania R. R., 129 F.Supp. 668 (S.D.N.Y.1955), aff'd 229 F.2d 610 (2nd Cir. 1956). Circumstantial evidence may at times be more certain, satisfying and persuasive than direct evidence. Michalic v. Cleveland Tankers, Inc., 346 U.S. 325, 330, 81 S. Ct. 6, 5 L.Ed.2d 20 (1960); Rogers v. Missouri Pac. R. R., 352 U.S. 500, 508 n. 17, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

The specific elements of proof which we find to support plaintiff's claim are:

1. Robins was without question a very highly qualified painter (see Finding of Fact 14).

2. Despite the fact that he had been regularly employed for thirteen years previously, he suddenly was unable to find work for over 2½ years—this period of unemployment following immediately upon his suspension from the union (see Findings of Fact 14, 15, 19 and 20).

3. Defendants contend that this failure to find employment was due to a lack of effort on the part of Robins. However, Robins made considerable effort to find work. He contacted employers, the business agent of District Council 9 and the assistant secretary of District Council 9—all to no avail (see Findings of Fact 19, 20 and 21).

4. When Robins contacted the business agent of District Council 9 for Local 892 (whose informal role was to find work for the members) he was told explicitly and in obscene language that he would not be given a job (see Finding of Fact 21).

5. Robins was told by certain employers that he was needed on the job, but then he was never hired (see Finding of Fact 20).

While the individual defendant Giunta and officials of Local 892 may very well have been involved in the "blacklisting" of Robins, there is no evidence to connect them. The circumstantial evidence referred to above implicates only officials of District Council 9 and liability for damages for lost wages must rest solely with defendant District Council 9.

In computing damages for these lost earnings we look to plaintiff's previous earnings as a guide. Over the five years immediately prior to the period of unemployment suffered by plaintiff his average yearly income was $3,300 (see Finding of Fact 14). The period of unemployment from February 5, 1963 (the date of imposition of discipline) until September, 1965 was two years and seven months. At $3,300 per year this means that plaintiff is entitled to damages of $8,525 for lost earnings.

As a further element of his claim for lost earnings, plaintiff points to the fact that for each of these three years during which he was unable to secure employment, he was unable to earn the necessary amount of wages to entitle him to a year's service credit under the union pension plan. Not only did he lose three years' credit but, more importantly, he suffered a "break" period which, under the rules of the pension plan, cancelled all the years of credit he had earned theretofore (see Finding of Fact 23).

Since we have found above that plaintiff's inability to secure work was proximately caused by defendant, District Council 9's illegal activity, it must follow that this loss of pension rights was also proximately caused by the same activity. Some question might arise as to the year 1965 during which plaintiff earned $2,348. However, the $2,348 earned during that year was insufficient to qualify for pension credit and those earnings were achieved only during the last four months of the year after plaintiff was finally able to find work.

Thus, we find that plaintiff is entitled to damages sufficient to compensate him for this loss of pension credit for the years 1963, 1964 and 1965. In lieu of awarding specific damages, however, we incorporate herein a stipulation entered into by plaintiff and defendant District Council 9, whereby the parties agree that plaintiff will accept the award of service credit for the three years in question in lieu of damages and in full payment and satisfaction of such damages.

As to the demand for punitive damages, there is insufficient evidence of malice on the part of any defendant to sustain such a claim.

Finally we come to plaintiff's claim for attorney's fees. Attorney's fees may be awarded in a suit of this sort at the discretion of the trial judge. See Gartner v. Soloner, 384 F.2d 348 (3rd Cir. 1967); Sands v. Abelli, 290 F.Supp. 677 (S.D.N.Y.1968). While there may have been some question in the past as to whether a finding of malice is necessary for an award of counsel fees in a case such as this (see, for example, Vars v. International Brotherhood of Boilermakers, 215 F.Supp. 943 (D.Conn.), aff'd 320 F.2d 576 (2nd Cir. 1963)), it is now clear that the trial judge's discretion is not circumscribed by such a requirement. The leading case in this area held specifically that the trial judge may, where he deems it proper "award counsel fees to union members who have in good faith pursued their rights under Title I of the Act." Gartner v. Soloner, supra at p. 356. No mention is made of the necessity of malice. Other cases have found an award of counsel fees appropriate where the efforts of plaintiff resulted in a benefit to the union. Sands v. Abelli, supra; Cf. Gilbert v. Hoisting & Portable Engineers, Local 701, 237 Or. 130, 139, 384 P.2d 136, 9 A.L.R.3d 1042 (1964).

Here it is clear that Robins' efforts redounded to the benefit of the union in that one result of his efforts was the preservation of internal democracy in the union. As the court said in Sands v. Abelli, supra, at p. 686: "To require [plaintiff] or his family to bear alone the financial burden of this litigation might discourage others in the labor movement from defending their rights."

Thus, we find all three defendants jointly and severally liable to plaintiff for his costs for attorney's fees. Counsel for plaintiff is directed to present appropriate proof as to the amount of his counsel fees in this court in Room 2103 on May 5th, 1971 at 4:00 P.M. Attor-

neys for defendants may attend and respond to any offer of proof.

## CONCLUSIONS OF LAW

1. The painting industry, in connection with which District Council 9 is engaged as a labor organization, is one affecting interstate commerce.

2. The court has jurisdiction of the subject matter and the parties hereto by reason of Sections 101(a) (2), 102, and 609 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 411(a) (2), 412, 529.

3. The disciplinary punishment imposed upon plantiff, barring him from the exercise of union rights, was a violation of Section 609 of the LMRDA, 29 U.S.C. § 529, and infringed his rights of free speech and free expression of opinion under Section 101(a) (2) of the LMRDA, 29 U.S.C. § 411(a) (2). Salzhandler v. Caputo, supra; Farowitz v. Associated Musicians of Greater N. Y., 241 F.Supp. 895 (S.D.N.Y.1965).

4. Plaintiff is entitled to compensatory damages from defendant District Council 9 in the sum of $8,525 by reason of his loss of earnings.

5. As an additional part of his damages for loss of earnings, plaintiff is entitled to damages for loss of pension he would have received had he not been barred from employment in 1963, 1964 and 1965. In lieu of such money damages and in accordance with a stipulation entered into between plaintiff and defendant District Council 9 (attached hereto), said defendant District Council 9 is directed to cause to be awarded to plaintiff pension service credit for the years 1963, 1964 and 1965.

6. Plaintiff is entitled to reasonable counsel fees. Defendants District Council 9, Local 892 and Thomas Giunta are jointly and severally liable for such counsel fees. Sands v. Abelli, supra. Counsel for plaintiff is directed to present appropriate proof as to the amount of his counsel fees in this court in Room 2103 on May 5th, 1971 at 4:00 P.M. Attorneys for defendants may attend and respond to any offer of proof.

Settle judgment on notice pursuant hereto.

## STIPULATION

It Is Hereby Stipulated And Agreed, by and between the attorney for the plaintiff and the attorneys for defendant District Council No. 9, as follows:

1. If and when pension service credit for the years 1963, 1964 and 1965 is duly awarded to plaintiff by the Painting Industry Insurance Fund, the plaintiff will thereupon withdraw his claim herein for damages resulting from loss of service credit for those years, as more fully set forth in paragraphs 26, 27 and 28 of his proposed findings of fact and conclusons of law herein and if such damages have meanwhile been awarded to him herein prior to the time such service credit shall have been awarded to him, the plaintiff will accept the award of such service credit in lieu of such award of damages and in full payment and satisfaction of such damages, it being understood and agreed that the damages herein referred to are limited to the damages for loss of service credit.

2. The foregoing shall be without prejudice to any other claim of plaintiff and to any and all defenses in this action on the part of this defendant.