Jessie COX

v.

**INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF the UNITED STATES AND CANADA et al.**

Civ. A. No. 17974.

United States District Court,
N. D. Georgia,
Atlanta Division.

July 31, 1975.

Thomas L. Carter, Jr. and Sidney S. Jones, Atlanta, Ga., for plaintiff.

Glenn Zell, Atlanta, Ga., for International Alliance.

Joseph Jacobs of Jacobs, Jacobs & Davis, Atlanta, Ga., for all other defendants.

## ORDER

EDENFIELD, Chief Judge.

This Landrum-Griffin Act, 29 U.S.C. § 412, case was tried to a jury from May 12 to 16, 1975. Although the jury returned a verdict in favor of three individual defendants, it found in favor of the plaintiff against the two defendant unions in the amount of $1.00 plus costs of court. Counsel for the plaintiff has now filed a motion seeking an award of $11,230.00 in attorney's fees. In assert-ing that he is entitled to recover attorney's fees he properly relies on the Supreme Court's relatively recent opinion in *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).[1]

In *Hall* the Supreme Court held that:

"The instant case is clearly governed by this aspect of *Mills*. The Labor-Management Reporting and Disclosure Act of 1959 was based, in part, on a congressional finding 'from recent investigations in the labor and management fields, that there have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct . . . .' 29 U.S.C. § 401(b). In an effort to eliminate these abuses, Congress recognized that it was imperative that all union members be guaranteed at least 'minimum standards of democratic process. . . .' Thus, Title I of the LMRDA—the 'Bill of Rights of Members of Labor Organizations'—was specifically designed to promote the 'full and active participation by the rank and file in the affairs of the union,' and, as the Court of Appeals noted, the rights enumerated in Title I were deemed 'vital to the independence of the membership and the effective and fair operation of the union as the representative of its membership.' [*Cole v. Hall*, 462 F.2d 777 (2 Cir. 1972)] 462 F.2d, at 780. See also *International Assn. of Machinists v. Nix*, 415 F.2d 212 (CA5 1969); *Salzhandler v. Caputo*, 316 F.2d 445 (CA2 1963).

"Viewed in this context, there can be no doubt that, by vindicating his

---

1. The defendants contend that *Hall* was effectively overruled by *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 121 (1975). This position is untenable. Both *Hall* and its predecessor case, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), were cited approvingly in the text of *Alyeska* at 258, 95 S.Ct. 1612, 44 L.Ed.2d 121, and since *Alyeska* the Supreme Court has continued to deny petitions for the writ of certiorari in cases challenging awards of attorney's fees in reliance on *Hall* and *Mills*. See, e. g., *Cincinnati Enquirer, Inc. v. Ramey*, —— U.S. ——, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975). At most, *Alyeska* can be interpreted as a cautionary note against an unduly expansive reading of *Hall*.

own right of free speech guaranteed by § 101(a)(2) of Title I of the LMRDA, respondent necessarily rendered a substantial service to his union as an institution and to all of its members. When a union member is disciplined for the exercise of any of the rights protected by Title I, the rights of all members of the union are threatened. And, by vindicating his own right, the successful litigant dispels the 'chill' cast upon the rights of others. Indeed, to the extent that such lawsuits contribute to the preservation of union democracy, they frequently prove beneficial 'not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs.' *Yablonski v. United Mine Workers of America,* 150 U.S.App.D. C. 253, 260, 466 F.2d 424, 431 (1972). Thus, as in *Mills,* reimbursement of respondent's attorneys' fees out of the union treasury simply shifts the costs of litigation to 'the class that has benefited from them and that would have had to pay them had it brought the suit.' *Mills v. Electric Auto-Lite Co., supra,* 396 U.S. at 397, 90 S.Ct. [616] at 628 [24 L.Ed.2d 593]. See also *Yablonski v. United Mine Workers of America, supra; Robins v. Schonfeld,* 326 F.Supp. 525 (SDNY 1971); *Cefalo v. International Union of District 50 United Mine Workers,* 311 F.Supp. 946 (DC 1970); *Sands v. Abelli,* 290 F.Supp. 677 (SDNY 1968). We must therefore conclude that an award of counsel fees to a successful plaintiff in an action under § 102 of the LMRDA falls squarely within the traditional equitable power of federal courts to award such fees whenever 'overriding considerations indicate the need for such a recovery.' *Mills v. Electric Auto-Lite Co., supra,* 396 U.S. at 391–392, 90 S.Ct. [616] at 625 [24 L.Ed.2d 593]." 412 U.S. 1, 7–9, 93 S. Ct. 1943, 1947, 36 L.Ed.2d 702 (1973).

The issue, then, which is presented for decision is whether or not plaintiff Cox by prosecuting this litigation has conferred upon his fellow union members so substantial a benefit that it is appropriate to require them to reimburse him for his expenses in doing so.

The dissenters in *Hall* expressed a fear that it would spawn an excessive amount of litigation. *Id.* 412 U.S. at 16, 93 S.Ct. 1943, 36 L.Ed.2d 702. This fear appears to have been unfounded. The court has surveyed the reported cases and has been unable to find any Landrum-Griffin Act cases subsequent to *Hall* which discuss the propriety of awarding attorney's fees. It thus appears that the best starting point for discussion is a comparison of the factual background of *Hall* and of this case.

The plaintiff in *Hall* was improperly expelled from his union in 1962. He then proceeded to exhaust all of his intra-union remedies without success. Approximately 18 months after his expulsion he filed suit. The district court preliminarily ordered him reinstated as a member over the objection of the union. Some five years later the case came on for trial. The union continued to resist plaintiff's claim that he was entitled to reinstatement but was unsuccessful at the district level. The union appealed but the Court of Appeals affirmed, 462 F.2d 777 (2 Cir. 1972). The union then sought the writ of certiorari but the Supreme Court granted the writ only as to the attorney's fees question and affirmed on that issue. When the case was last reported, the union was continuing to fight valiantly on, resisting the award of attorney's fees for litigating the issue of attorney's fees, 376 F.Supp. 460 (E.D.N.Y.1974).

This case presents a somewhat different chronology. Plaintiff Cox was wrongfully expelled from his union at its February 1972 meeting. He appealed his expulsion to the International but failed to take any of the steps necessary to secure a stay of his expulsion pending the appeal. The International took no action on the appeal for a period of approximately one year and on March 12,

1973, this action was filed. On April 27, 1973, apparently as a result of this action having been filed, the International ruled on plaintiff's appeal. The International reversed the Local's decision and ordered plaintiff reinstated to full membership. Although further appeal procedures were available, the Local acquiesced in the International's decision and reinstated plaintiff without any further delays and without an appeal. Some time thereafter the plaintiff was elected as secretary-treasurer of the Local, which fact seems to negative any possibility of a lingering animus.

The distinction seems clear. In both this case and *Hall* the plaintiff was wrongfully expelled from his union in violation of the Landrum-Griffin Act. In *Hall*, the union, over a course of many years, persisted in opposing plaintiff's reinstatement and reinstated him only when required by a court order to do so. Soon after this case was filed the union conceded that the plaintiff should not have been expelled and voluntarily reinstated him.

It appears to the court that for so long as the union maintained its contention that it was entitled to expel the plaintiff from the union for calling one of the officers a petty thief, the union was taking a position that infringed upon the rights of all of its members. So long as this litigation was directed toward reversing that position, the plaintiff was seeking to vindicate the right of all of his fellow union members and is entitled to an award of attorney's fees.[2] Once, however, the union abandoned that position and reinstated the plaintiff, the continued litigation of the damage issue was precisely the sort of "private feuding having no general significance" feared by the dissenters in *Hall*. Plaintiff's quest to recover personal damages, while understandable, conferred no benefit upon his fellow union members—indeed, the damages

would have been recovered from them. It is true that the plaintiff requested equitable relief in his complaint, but he did not prevail on this issue: no injunction was deemed appropriate or necessary after plaintiff was voluntarily reinstated. Thus the court concludes that the plaintiff is entitled to an award of attorney's fees for the hours expended by his counsel prior to plaintiff's reinstatement but not entitled to a similar award for those hours expended subsequent to his reinstatement. On the present record, however, the court is unable to determine what that award should be. Counsel for the plaintiff is directed to file within ten (10) days a detailed affidavit setting forth the hours expended prior to plaintiff's reinstatement, the day on which they were expended, and the specific legal task to which they pertained. The defendants are granted ten (10) days thereafter within which to file objections thereto. At the expiration of twenty (20) days the Clerk of the Court is directed to resubmit this case.

Two further matters remain to be disposed of. The first is allocation of the attorney's fee award between the defendants. The plaintiff's injury (expulsion) was received at the hands of the local unit. Nonetheless, the plaintiff contended, and the jury apparently agreed, that his injury was aggravated by the International's delay in ruling on his appeal. It appears to the court that a fair apportionment of the attorney's fee award would be one-third (⅓) to be paid by the International and two-thirds (⅔) to be paid by the Local.

The second matter is costs. The plaintiff seeks $48.40 in filing fees, $39.60 in marshal's service costs, and $553.53 in deposition costs. In this action a verdict was returned against two defendants but in favor of three other defendants. The prevailing defendants were represented by the same counsel as

2. The fact that the reinstatement was made voluntarily rather than as a result of a court order does not preclude an award of attorney's fees. 6 Moore's Federal Practice, ¶ 54.77[2] at n. 11 (1972).

one of the defendants held to be liable. In the case of such a split verdict it appears to the court that justice would best be served by all parties bearing their own costs and none being reallocated through taxation.